**Joe B. HUFF, et ux.,**
**Plaintiffs-Appellees,**

v.

**STATE FARM FIRE AND CASUALTY INSURANCE COMPANY,**
**Defendant-Appellant.**

Court of Appeals of Tennessee,
Eastern Section.

May 23, 1986.

Permission to Appeal Denied by
Supreme Court Sept. 15, 1986.

James W. Harrison, Morristown and S. Morris Hadden, Kingsport, for defendant-appellant.

Martha Y. Johnson and Lee Dan Stone, III, Tazewell, for plaintiffs-appellees.

## OPINION

FRANKS, Judge.

In this action, the chancellor entered judgment for plaintiffs for fire loss of their dwellinghouse and contents under a policy issued by defendant. Defendant has appealed, insisting the evidence preponderates against recovery under the policy.

The house was unoccupied at the time of the fire, which occurred on October 21, 1983, around 4:00 a.m., plaintiffs having moved to Michigan in September. At the time of the fire, plaintiffs were in serious financial circumstances since Joe Huff had only sporadic employment during the previous three years. They had a number of outstanding debts and were in arrears on the payments, including notes on the house. At the time of the loss, the house was listed for sale but plaintiffs had no prospective purchasers and Joe testified that prior to leaving Tennessee he instructed his mother-in-law, Elsie Demarcus, to

look after the house and gave her a key. He testified when he and his wife moved they "took a washer-dryer [and] just personal belongings", leaving the furniture behind along with a pickup truck in the basement. He testified the doors and windows were boarded, nailed and secured and he had no enemies that he "knew of".

The chancellor's analysis of the evidence is essentially correct except with one crucial exception: the testimony of Fate Payne.

> The chancellor, in his fact finding, said: [T]he facts were, without any question but what the Huffs were in pretty rough financial circumstances at that time. He had been unemployed quite a lot, had been offered his old job back at Chrysler, and went back to Michigan for that purpose. The house had been listed for sale. Many of the elements that investigators look to to determine origin of fire are evident in this case, it goes without saying. You look to see if there is for sale signs up. You look to see if the mortgage payments are behind. You look to see if the parties are in bad financial condition. Those are all circumstances that an investigator looks to, ...

> In this case, I would think that the preponderance of the evidence is that this fire was an arson fire.... The question is whether or not the Complainant, by their own act, or through an agent, is guilty of arson.

Three witnesses testified that during the week preceding the fire they had observed a red pickup truck driving to the plaintiffs' house and leaving loaded with furniture and other items. One neighbor, Fate Payne, testified that during the week preceding the fire he "saw a red Dodge pickup going in and out several times." He further testified that he knew Mrs. Demarcus by sight and that "two or three times" he had seen her at the house at the same time as the truck.

Julia Ann Poore, another of the Huffs' neighbors, initially testified she never saw Mrs. Demarcus at the house at the same time as the truck. On redirect, she was asked whether she had previously told an insurance investigator and an attorney that she had seen Mrs. Demarcus at the house at the same time as the truck and she replied, "if they say I did, I did...." Mrs. Poore's husband, Joe Poore, testified he saw a woman accompany two men in the pickup truck on one occasion but he did not identify the woman as Mrs. Demarcus. He said that he could recall seeing the pickup at the house on October 18th and 19th in the late afternoons and "they was [sic] taking furniture out of the house."

Elsie Demarcus testified she never participated in hauling furnishings from the house and was not involved. She testified the last time she visited the dwelling was on Tuesday, October 18th.

The chancellor stated he could not, upon the basis of the facts of the case, "conclude that the plaintiff himself, or through an agent, committed arson." He emphasized that Fate Payne had "left some inference" that Mrs. Demarcus was at the house at the same time as the pickup truck, "but did not directly testify that he saw the two vehicles there together." The chancellor found inconsistencies in the testimony of the other witnesses, who testified to the alleged presence of Mrs. Demarcus at the house, rendering their testimony "unreliable".

All competent evidence tending to prove arson is admissible, including "evidence of the insured's financial condition, evidence of the removal of personal property from the burned buildings shortly before the fire occurred, and evidence of the value of the property destroyed, ..." 46 C.J.S., *Insurance*, § 1338(b) (1946). Circumstantial evidence is competent to prove arson "if the influences are not too remote and all circumstances, including the inferences, are of sufficient force to bring minds of ordinary intelligence to a persuasion of incendiarism by a fair preponderance of the evidence." J. Appleman, *Insurance Law and Practice*, § 12682 (1980). In this connection, a well-connected chain of circumstances may be as cogent as direct evidence and control. *Aetna Cas. & Sur. Co. v. Parton,*

609 S.W.2d 518 (Tenn.App.1980). Cogent circumstances in this case are the undisputable, serious financial difficulties of the plaintiffs at the time of the fire, their inability to sell the house and, upon their move to Michigan, they were faced with the prospect of maintaining payments on two residences. The house burned within a very short time after the furnishings were mysteriously removed and the electrical service terminated for failure to pay the utility bill. An insurance investigator testified the items left in the house "were not consistent with those items that are taken in a theft. For instance, mattresses and box springs were stolen, and a shotgun in the hall closet was left." Moreover, the proof indicates plaintiffs removed certain items of largely sentimental value but left behind numerous necessary household items. Plaintiffs admitted they had experienced two previous insurance losses, including a truck that was "stolen and burned" in 1979, and Mrs. Demarcus had been paid for an insurance loss to a house that was destroyed by an arsonist in Michigan in 1982.

There is no dispute a red pickup truck was observed entering the premises during the week preceding the fire and leaving with cargoes of household items. The dispute centers on whether Mrs. Demarcus was present at the house when the items were removed. The chancellor obviously predicated his decision upon his conclusion that Fate Payne "did not directly testify that he saw the two vehicles there together" and that Mrs. Poore's testimony on the issue was "not credible".

The chancellor clearly indicates his ruling would have been otherwise had there been acceptable evidence that Mrs. Demarcus was present at the house when the pickup truck was removing the furniture.[1] On this issue, the chancellor misapprehended the testimony of Fate Payne. The record

establishes the chancellor found Fate Payne to be a credible witness.[2]

Payne testified he had observed the red pickup entering the premises "four or five times" over "a week and a half or two week" period. He further testified:

Q. During the period of time that this red pickup truck was going in empty and coming back loaded from the Huff house, was Mrs. Demarcus there at the time the truck was there?

A. I would usually see her come in, and then the truck would come in, and then she would go out, and then later, the truck would come out.

Q. *Would they be there at the same time?*

A. *I'd say two or three times, they were there at the same time, that I know of.*

[Emphasis supplied.]

This is direct testimony that Mrs. Demarcus was present at the house, which the chancellor felt was essential to deny recovery. Any uncertainty in the witness's testimony only goes to the number of occasions Mrs. Demarcus was observed at the scene, not whether she was there when the truck was present.

Accordingly, the evidence preponderates against the chancellor's findings and we reverse the judgment and dismiss the action. The cause is remanded, with costs incurred on appeal assessed to plaintiffs.

SANDERS and GODDARD, JJ., concur.

---

1. The chancellor observed, had there been proof Mrs. Demarcus was present at the same time as the pickup truck, "the defendant would have made out their [sic] affirmative defense of arson."

2. The chancellor observed: "Fate [Payne] is a very responsible businessman in this community. I went horseback riding with him last week, and know him very well."