Elaine McREYNOLDS, Comm. of
Insurance, Plaintiff/Appellee,

v.

CHEROKEE INSURANCE
CO., Defendant.

In re Claim of Hugh HEFFLEY,
Claimant/Appellant.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Feb. 15, 1991.

Application for Permission to Appeal
Denied by Supreme Court
July 29, 1991.

James T. Allison, William B. Brady, Memphis, for claimant/appellant.

Keith Jordan, Nashville, for plaintiff/appellee.

OPINION

TODD, Presiding Judge.

This is a claim by Hugh Heffley (hereafter insured) against Cherokee Insurance Company (hereafter Cherokee) for loss by fire of his house and fire damage to his boat, both insured by Cherokee. The claim was presented in the proceedings for rehabilitation of Cherokee which are captioned as above. The Trial Judge, sitting without a jury, dismissed the claim of insured, and he has appealed and presented for review the following issues:

I. THE TRIAL COURT ERRED IN RULING THAT DEFENDANT CARRIED THE BURDEN OF PROOF OF SHOWING THE FIRE WAS INCENDIARY AND THAT PLAINTIFF HAD BOTH THE MOTIVE AND OPPORTUNITY TO SET THE FIRE

II. THE TRIAL COURT ERRED IN APPLYING THE "MISSING WITNESS RULE" AGAINST THE PLAINTIFF

III. A. *The Trial Court erred in admitting the testimony of witness, Terry Studyvin that he smelled an odor of a flammable liquid of the scene of the of (sic) the scene of the fire.*

B. *The Trial Court erred in admitting the testimony of witness, Joseph Wingbermuehle that he saw a suspicious looking pour pattern at the fire scene.*

The first issue as to the conclusion of the Trial Court will be reserved until after resolution of the second and third issues dealing with rulings leading to the conclusion.

*Second Issue: The Missing Witness Rule*

The principal defense of Cherokee, the basis of the judgment of the Trial Court, and the fact question before this Court is arson.

The "Missing Witness" was Linda Conway, as to whom the memorandum of the Trial Judge states:

Plaintiff claims he left his home about midnight on November 12, 1983 to drive to Arkansas to go deer hunting with his twenty-one year old son and his live-in girlfriend, Linda Conway. He states that they drove to Springfield, Missouri where they spent the night at a motel. Records show that Linda Conway, on the date of the fire, rented a 20' × 24' storage locker in Springfield. (Ex. 23) Plaintiff claims they decided not to go on to Arkansas and returned home to find the house destroyed by fire.

Testimony of plaintiff's son contradicted where they stopped en route to Springfield, and whether they took a hunting rifle with them. Plaintiff made no effort to secure the testimony or deposition of Linda Conway. Plaintiff claims they parted company in the fall of 1984. After that, plaintiff pleaded guilty to threatening Linda Conway with a fire bomb and served six months.

\* \* \* \* \* \*

3. Where there is a relationship between an uncalled witness and a party, it justifies the inference that the witness was not called by that party because what the witness would have said, if truthful, would have been detrimental. D. Paine—Tenn. Law of Evidence § 46.

A comprehensive review of the "Missing Witness Rule" is found in *State v. Francis*, Tenn.1984, 669 S.W.2d 85. The rule is applied with restraint; and, when applied, it permits (not requires) an inference by the finder of fact that the testimony of the absent witness would have been unfavorable to the party having special access to the testimony of the witness. Among the considerations controlling the application of the rule are availability of the witness to the process of the trial court, the capability of the witness to eluci-

date the transaction at issue, and the relationship of the witness to the party failing to produce the witness.

■ The inference produced by failure to call a witness does not amount to substantive evidence of a fact of which no other evidence is introduced. The extent of its effect is to impair the weight of the evidence of the party affected and to enhance the weight of his adversary. *National Life and Accident Insurance Co. v. Eddings*, 188 Tenn. 512, 221 S.W.2d 695 (1949).

The plaintiff testified that he found Linda Conway in St. Louis, Missouri, and that she refused to give a deposition. There is no evidence that the defendant was aware of the whereabouts of Linda Conway, or could have secured her testimony.

The memorandum of the Trial Judge contains nothing to indicate that he considered the absence of Linda Conway for any purpose except to determine the weight to be given to the testimony of plaintiff. This was a minor consideration, for plaintiff testified in person before the Trial Judge who was able to observe his demeanor and manner of testifying, together with the same aspects of the witness who contradicted parts of his testimony.

■ Generally, in non-jury cases, the credibility of witness is for the Trial Judge, whose determination thereof will not be disturbed on appeal unless real evidence compels a contrary conclusion. *State ex rel. Balsinger v. Town of Madisonville*, 222 Tenn. 272, 435 S.W.2d 803 (1968).

Under the circumstances, this Court would give little or no weight to the absence of the witness, Linda Conway; and will independently view other evidence in its determination of the preponderance of the evidence.

### Third Issue: Testimony of Terry Studyvin and Joseph Wingbermeuhle

The deposition of the witness, Studyvin, records the following:

Q. (BY MR. BEALKE) Okay. Let me ask you this: You attempted to go into the fire, the house itself twice and you were unsuccessful; at any time while you were fighting the fire did you smell anything that you would associate with a flammable liquid?

MR. ALLISON: Object to the leading.

Q. (BY MR. BEALKE) You can answer.

A. I believed I smelled some petroleum product at one time.

The testimony of the witness, Wingbermuehle, records the following:

Q. (BY MR. BEALKE) When you cite on this report that incendiary suspicion is possible, that is based on the fact that you personally saw some suspicious-looking pour patterns in the fire scene?

MR. ALLISON: Object to the leading.

A. It appeared to be pour patterns and that's why we call the fire marshal in.

Rule 6 of the Rules of this Court provides in pertinent part as follows:

Rule 6. Briefs.—(a) Written argument in regard to each issue on appeal shall contain:

1. A statement by the appellant of the alleged erroneous action of the trial court which raises the issue and a statement by the appellee of any action of the trial court which is relied upon to correct the alleged error, with citation to the record where the erroneous or corrective action is recorded.

2. A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.

3. A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.

\* \* \* \* \* \*

(b) No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument thereon contains a specific reference to

the page or pages of the record where such action is recorded.

■ This Court is not under a duty to minutely search a voluminous record to verify unsupported allegations in a brief. *Schoen v. J.C. Bradford and Co.*, Tenn. App.1982, 642 S.W.2d 420.

Nothing is found in plaintiff's brief to indicate where a record can be found that his objections, above, were presented to the Trial Court and ruled upon adversely to the plaintiff. On page 269 of the transcript is found the record that the deposition of Joseph Winghermuchle (sic) was marked Exhibit 24 and the deposition of Terry Studyvin was marked Exhibit 25. On pages 270 and 271 is found the objection of plaintiff to the quoted testimony of the witness, Studyvin and the adverse ruling of the Trial Court thereon.

On pages 272–275 of the transcript are found numerous objections to various parts of the deposition of the witness, Winghermuchle (sic), but no objection to the above quoted testimony is there recorded. At the conclusion of plaintiff's objections and rulings on this deposition is recorded the following:

> Mr. Allison: I will waive the remainder of exhibits (sic) in this deposition.

It is likely that the word "exhibits" was intended to be "objections." In any event, the objection presented on appeal was waived by failure to present it during the trial.

■ The Trial Court erred in overruling plaintiff's objection to one question in the deposition of the witness, Studyvin. The question was blatantly leading, and counsel had ample opportunity to reword the taking of the deposition. T.R.E. Rule 611. If leading questions are to be indiscriminately permitted, the Rule is emasculated and should be abolished.

Nevertheless, the error is not necessarily reversible in this non-jury case, for this Court in considering the merits de novo considers such evidence as it deems admissible and disregards that which it deems inadmissible. T.R.A.P. Rule 13(d); *Berke*

*v. Chattanooga Bar Assn.*, 58 Tenn.App. 636, 436 S.W.2d 296 (1968).

*First Issue: Whether Defendant Carried the Burden of Proof*

■ Where a cause of action arises in another jurisdiction, the legal rights of the parties are governed by the law of that jurisdiction, *Winters v. Maxey*, Tenn. 1972, 481 S.W.2d 755; *Robertson v. Queen*, 87 Tenn. 445, 11 S.W. 38, 3 L.R.A. 214, 10 Am.Law Rep. 590 (1888). However, as to matters of procedure, the law of the forum controls *Patterson v. Smith*, 57 Tenn.App. 673, 424 S.W.2d 204 (1965).

■ To make out a defense of arson, a fire insurance company must show by a preponderance of the evidence that the loss was due to a fire of incendiary origin, that the insured had an opportunity to set the fire, and that he had a motive to do so. The rule as to admissibility of circumstantial evidence is liberal in such a case. *Harris v. Zurich Insurance Co.*, 8th Cir.1975, 527 F.2d 528; *McIntosh v. Eagle Fire Co. of New York*, 8th Cir.1963, 325 F.2d 99; *Ralls v. Northwestern National Insurance Co.*, E.D.Mo.1965, 238 F.Supp. 228.

In Tennessee, in a civil case, arson may be proved by a simple preponderance of the evidence and may be by circumstantial evidence. *Aetna Cas. & Sur. Co. v. Parton*, Tenn.App.1980, 609 S.W.2d 518.

■ On July 18, 1983, Cherokee issued to defendant a fire insurance policy insuring his house for $125,000 and contents for $100,000. On July 25, 1983, Cherokee issued to defendant a fire insurance policy insuring his boat for $6,000.

On November 13, 1983, the house, contents and boat were destroyed or damaged by fire. The first witness to see the fire was Paul Beckemier, a police officer, who testified that when he arrived, flames were coming out of the upper floor, that the lower floor was filled with smoke, and that he smelled the odor of gasoline, lighter fluid or similar substance.

The fireman, Terry Studyvin, testified without objection that the house was 90% engulfed in flames when he arrived; that

when he cleaned his equipment, he noticed a strong smell of some kind of gasoline and that when he washed the coat, the washwater left a "rainbow effect" on the concrete where the coat was washed.

Joseph Wingbermuehle, the fire chief, testified about suspicious "pour patterns" and noted on his record that the fire was "possibly of incendiary origin."

The report of the Missouri Fire Marshall indicated that the fire was "suspicious with an undetermined means of ignition."

Donald Buettner, a professional fire investigator, testified as to his investigation and his observation of "trailer patterns" indicating that an inflammable fluid had been poured about in the house. He gave his expert opinion that the fire was incendiary in origin.

Mr. Buettner also testified that the "clear crazed glass" indicated a fast spreading fire.

A laboratory analysis indicated a combustible liquid on a part of the debris.

The only evidence to contradict the foregoing was the testimony of an expert who was not employed until 1985, who testified as to his conclusions from the facts. When asked whether he had ruled out a liquid accelerant as the cause of the fire, he answered "No."

The clear preponderance of the evidence supports the finding that the fire was of incendiary origin.

It is uncontroverted that, immediately prior to the fire, plaintiff and his son resided in the home which burned. Residence on the premises is evidence of opportunity. The plaintiff attempted to negative opportunity by an effort to show that he was not present on the premises at the time the fire started. He testified that for three days prior to the fire, he was in bed with flu; that between 6:00 p.m. and 8:00 p.m. the day before the fire he decided to take his son to Dover, Arkansas, a distance of 370 miles, to go hunting with relatives; that they left 3 or 4 hours later accompanied by plaintiff's female friend, Linda Conway; that the house was heated with gas and had old wiring; that they drove 200 miles to Springfield in 3–½ hours, arriving about 3:30 or 3:45 a.m.; that plaintiff was sick, decided not to complete the trip, slept at the home of his female friend in Springfield, left Springfield between 2:30 and 4:00 on July 13, 1983, and arrived home about 7:00 p.m. finding the house destroyed by fire.

Plaintiff's son generally corroborated plaintiff's testimony, but there were conflicts in the details. Plaintiff testified that he, his lady friend and his son drove from the home together in a Thunderbird to a car lot to pick up a mobile home for the trip, that either he drove the Thunderbird to the lot and his lady friend drove it back to the house as he (plaintiff) drove the mobile home to the house; that he and his son swapped batteries in the Thunderbird and mobile home and took the Thunderbird back to the car lot; that he (plaintiff) drove the mobile home to the lot and from there to Springfield.

Plaintiff's son testified that they took both the Thunderbird and the mobile home on the trip, but that they left the Thunderbird at a truck stop because the lady friend, who was driving the Thunderbird, drove along side the mobile home and told plaintiff there was no license plate on the mobile home; and that they continued the journey to Springfield in the mobile home.

Officer Beckemier testified that, when he arrived at the fire, there was a big camper parked on one side of the house.

Plaintiff testified that he expected his lady friend to return from Springfield with him and his son, but:

> She decided that she should stay there because she wanted to rent a storage building to put her stuff in—.
>
> She wanted to give up her apartment, put her stuff in storage—.

Plaintiff's testimony was confusing and contradictory in many other details.

Moreover, there is evidence that plaintiff's reputation for truth and veracity was "not good."

Plaintiff admitted that he placed a container of gasoline under or near the automobile of his lady friend and lit a wick

leading to the gasoline to scare her, and that he served six months in jail for this offense.

The Trial Judge was amply justified in disbelieving the testimony of plaintiff and of his son that plaintiff was "out of town" when the fire started.

Moreover, the generally recognized fact that there are facilities for delayed start of a fire is a proper matter for judicial notice.

From the foregoing reasons, this Court concurs in the finding of the Trial Judge that plaintiff had opportunity to set the fire which destroyed his house, either by being present at the start or of leaving a device to start the fire while he was away.

There is also circumstantial evidence of motive.

Plaintiff left certain valuables in his house in a safe he thought was fireproof. (It was not.)

Plaintiff owed a $10,000 note which was due the day after the fire. (It was actually paid about 30 days later.)

Plaintiff's employment and income were not suggestive of a solid economic condition. In his early life, he was a heavy equipment operator. Later, he engaged in demolition contracting, but ceased this business in 1974 or 1975. Thereafter, he traded in Indian jewelry, old clocks and automobiles. He has not filed an income tax return since 1975.

He paid his gas (heat) bill irregularly, it was turned off for non-payment, and plaintiff turned it back on without authorization.

Plaintiff freely admitted a colorful life beginning when he was 14, when he was charged with fathering a child, and married the mother, continuing through nine marriages and divorces, holding property in his parents' names, bartering for property, not reporting income for taxation, and increasing the insurance on his home from $54,000 to $125,000 in the last policy purchased.

Where the testimony of a witness is not contradicted by direct evidence or circumstances inconsistent with its truth, it must be accepted as true. *Cleveland*

*Wrecking Co. v. Butler,* 57 Tenn.App. 570, 421 S.W.2d 380 (1967).

However, in the present case, the plaintiff was both impeached as to credibility and contradicted by the circumstances. His corroborating witness, his son, was, to some extent, impeached by inconsistencies, but his testimony was clearly contradicted by the circumstances.

An inference arising from proven circumstances is not destroyed by contrary testimony. *McMahan v. Tucker,* 31 Tenn. App. 429, 216 S.W.2d 356 (1949).

The Trial Judge declined to credit the testimony of plaintiff for good reason. His decision to do so is not reversible by this Court under the circumstances. *State ex rel. Balsinger v. Town of Madisonville,* 222 Tenn. 272, 435 S.W.2d 803 (1968).

The circumstances support a finding of arson by plaintiff. His discredited testimony is not an effective rebuttal of the inference produced by the circumstances.

The evidence does not preponderate against the factual findings of the Trial Judge. His judgment is affirmed. Costs of this appeal are taxed against the plaintiff. The cause is remanded to the Trial Court for any necessary further proceedings.

Affirmed and Remanded.

LEWIS and KOCH, JJ., concur.