Michael G. **WALTERS** and wife, Sherrie Walters, Plaintiffs/Appellees,

v.

**TENNESSEE FARMERS MUTUAL INSURANCE COMPANY,** Defendant/Appellant.

Court of Appeals of Tennessee,
Western Section
at Jackson.

Sept. 14, 1993.

Application for Permission to Appeal,
Denied by Supreme Court
Feb. 28, 1994.

Gary Fox, Fox & Kendall, Union City, for defendant/appellant.

Damon E. Campbell, Conley, Campbell, Moss & Smith, Union City, for plaintiffs/appellees.

FARMER, Justice.

This appeal is from the trial court's judgment holding that Appellant was obligated to provide fire insurance coverage to Appellees under the terms of their policy as facts sufficient to establish the defense of arson were not proven.

Sherrie and Michael Walters, Appellees, were married on June 23, 1989 when she was 18 and he was 20. On January 5, 1990, their first child was born. They purchased the residence which is the subject of the instant dispute in October 1989. At this time, they also purchased a homeowners insurance policy with Appellant, Tennessee Farmers Mutual Insurance Company (Tennessee Farmers) to insure the property. The declarations page of the policy states that the insurer's limit of liability is $25,000 on the dwelling and $12,500 on personal property.

On February 12, 1990, the Walters' home was damaged by fire. They submitted a proof of loss and claim for $37,500 less a $100 deductible and Tennessee Farmers refused payment. The Walters then filed suit for breach of contract. By answer, Tennessee Farmers asserted that it was not liable to the Walters for any sums under the policy because "one or both of the [Walters] intentionally caused to procure the burning of their own residence...."

The trial court entered judgment for the Walters in the amount of $37,400 less any offsets or payments previously made by Tennessee Farmers and awarded prejudgment interest. The following Findings of Fact, pertinent to this appeal, were determined by the trial judge:

(4) That Plaintiffs advised the local agent of the Defendant, ... that the residence was purchased for $21,000.00 to $22,000.00, that improvements were to be made, that the Court finds that the coverage as established was not assessed or

based upon fraudulent or false representations by the Plaintiffs, and that this testimony as presented remains unrefuted.

. . . .

(6) That proof of loss as to the residence and as to the contents was submitted, reflecting the total damages of $43,289.35, including contents damages of $20,789.35, this being the actual cash value, and it's my understanding this was the actual cash value policy, . . . .

(7) That damages to the residence was a total loss and that the building could not be utilized for rebuilding purposes, and that total damages sustained by the Plaintiffs as a result of the fire loss was $43,289.35.

(8) That evidence of kerosene was found in the charred debris in two areas within the residence. There has been testimony here today that the fire was one of an incendiary in [sic] nature. The origin of the fire appears to be not disputed in that it occurred in the bathroom area. The Court does not make a finding that it is incendiary, although there is testimony that has been established to that fact.

(9) . . . the previous owner testified that he has on occasion spilled or overflowed kerosene in a heater in the same location as in one of the areas which contained kerosene debris and that he has routinely stored kerosene cans in another location, which happened to be in the other area which kerosene was detected.

The Court finds that the evidence that relates to financial burden and to the marital problems do not suffice to establish motive, and I make that finding because I state that the Plaintiffs' parents, . . . both set of parents, have testified that they were willing to assist within the financial burden, that they did so, and that they do so freely. In fact, Mr. Walters, it should be noted, was also on the note of the residence. The Court further finds that all of the payments were current. Obviously there were financial burdens but the Court does not find that these would rise to the level of a motive under the facts as presented. As to the marital problems, the Court would simply have to recognize the fact that these were two 18–year old almost kids themselves with another—with a child born to the marriage and that the problems that they were encountering within their marriage were problems that would be no greater than any other parties with those facts as established.

In conclusion, based upon the findings that the Court has set out here at this time, the Court finds that the Defendants have breached its contract of insurance and has failed to perform as required under the contract.

The following issues, as presented by Appellant, are before this Court for review:

I. That the Court erred in not allowing Mike Parrott to testify as an expert witness.[1]

II. That the Court erred in finding there was no evidence of motive to commit arson.

III. That the Court erred in not finding the plaintiffs had willfully burned their house.

Tennessee Farmers argues that the trial court erred in finding that the facts were insufficient to establish "motive" on behalf of the Walters. Our review of the trial court's findings of fact is de novo upon the record, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. T.R.A.P.13(d). Tennessee Farmers asserts that "motive" was established due to the proof concerning the Walters' financial condition. "All competent evidence tending to prove arson is admissible, including 'evidence of the insured's financial condition, . . .'" *Huff v. State Farm Fire & Casualty Ins. Co.,* 716 S.W.2d 927, 928 (Tenn. App.1986) (quoting 46 C.J.S. Insurance § 1338(b) (1946)).

Mrs. Walters testified that neither she nor her husband was working at the time of the fire. She stated that the only income they were receiving at this time was $108 per month from the national guard and that this was insufficient to pay their debts. She stat-

---

**1.** During oral argument, Appellant conceded that any error by the trial court as to this matter was harmless. Therefore, this issue will not be addressed.

ed that they received assistance from her grandmother, parents and her husband's parents. She testified that, at the time of the fire, both the house and car payments were current. She concluded that they were not under "financial stress" and that if they needed anything "it was provided." These statements were confirmed by Mr. Walters who testified that his parents had agreed to make the house payments while he was unemployed.

Mrs. Walters' father testified that he was not aware of any financial problems of the couple, although they had argued over Michael's inability to find work. He stated that he and his wife were "always there to help" financially and that he had loaned the Walters money. He knew of nothing that they needed during their unemployment. Mrs. Walters' grandmother testified that she had provided financial assistance as did Michael's father who testified that he cosigned the note enabling his son and daughter-in-law to purchase the home.

■ Upon review of the above testimony and the entire record, we hold that the evidence supports the trial court's finding that the facts are insufficient to prove motive. Tennessee Farmers' reliance on *McReynolds v. Cherokee Insurance Company*, 815 S.W.2d 208 (Tenn.App.1991), is misplaced. Tennessee Farmers asserts that the facts in McReynolds are less compelling than those presently before us and the McReynolds court found circumstantial evidence sufficient to establish motive. As stated in McReynolds:

There is also circumstantial evidence of motive.

Plaintiff left certain valuables in his house in a safe he thought was fireproof. (It was not.)

Plaintiff owed a $10,000 note which was due the day after the fire. (It was actually paid about 30 days later.)

Plaintiff's employment and income were not suggestive of a solid economic condition. In his early life, he was a heavy equipment operator. Later, he engaged in demolition contracting, but ceased this business in 1974 or 1975. Thereafter, he traded in Indian jewelry, old clocks and automobiles. He has not filed an income tax return since 1975.

He paid his gas (heat) bill irregularly, it was turned off for non-payment, and plaintiff turned it back on without authorization.

Plaintiff freely admitted a colorful life beginning when he was 14, ... holding property in his parents' names, bartering for property, not reporting income for taxation, and increasing the insurance on his home from $54,000 to $125,000 in the last policy purchased.

*McReynolds,* 815 S.W.2d at 213.

While the Walters' financial condition appears less than "solid," the preponderance of the evidence reveals that their debts were being regularly paid, albeit not by them personally. Contrary to *McReynolds,* the evidence does not reveal an attempt by the Walters to safeguard their personal belongings prior to the fire. The proof shows that most, if not all, of the Walters' belongings were damaged by the fire.

Tennessee Farmers also relies upon *Huff v. State Farm First & Casualty Insurance Co.,* 716 S.W.2d 927 (Tenn.App.1986), wherein this Court found that the facts were sufficient to establish arson. *Huff,* 716 S.W.2d at 929. The Huffs were in "undisputable, serious financial difficulties." *Id.* Mr. Huff had been unemployed "quite a lot" and had been offered a return to previous employment in Michigan. The couple had difficulty selling their home and faced the possibility of maintaining payments on two residences. Id. at 928–29. They were in arrears on the house payment and had a number of outstanding debts. Id. at 927. There was evidence that prior to the fire, the Huffs had removed numerous items of personalty, including items of largely sentimental value, from their home. Id. at 928–29.

■ Tennessee Farmers argues that the trial court failed to consider the other elements of proof necessary to establish arson after determining that the facts were insufficient to prove motive. Tennessee Farmers asserts that McReynolds negates "the necessity of motive as a primary factor in proving arson or at best [one] need only show any evidence of motive to further consider the

other elements of incendiary origin or opportunity." *McReynolds* states:

> To make out a defense of arson, a fire insurance company must show by a preponderance of the evidence that the loss was due to a fire of incendiary origin, that the insured had an opportunity to set the fire, and that he had a motive to do so. The rule as to admissibility of circumstantial evidence is liberal in such a case. *Harris v. Zurich Insurance Co.,* 8th Cir. 1975, 527 F.2d 528; *McIntosh v. Eagle Fire Co. of New York,* 8th Cir.1963, 325 F.2d 99; *Rallo v. Northwestern National Insurance Co.,* E.D.Mo.1965, 238 F.Supp. 228.

*McReynolds,* 815 S.W.2d at 211. The party attempting to prove arson must establish all three elements of the defense and if one is not shown by a preponderance of the evidence, it then becomes moot to demonstrate the others. We concur in the decision of the trial court that the facts are insufficient to establish the defense of arson.

The judgment of the trial court is affirmed. Costs are taxed to Appellant, for which execution may issue if necessary.

CRAWFORD, J., and NEARN, Retired Judge, concur.