**Larry C. ALEXANDER,**
**Plaintiff/Appellee.**

v.

**TENNESSEE FARMERS MUTUAL IN-SURANCE COMPANY, Defendant/Third–Party Plaintiff/Appellant,**

v.

**Lula ALEXANDER, Jennifer Alexander, Nina Alexander and Christopher Dunlap, Third–Party–Defendants/Appellees.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

March 14, 1995.

Application for Permission to Appeal
Denied by Supreme Court
July 10, 1995.

Charles L. Trotter, Jr., Huntingdon, for defendant/third-party plaintiff/appellant.

Larry J. Logan, McKenzie, for plaintiff/appellee.

Steve Greer, Greer and Greer, Paris, Attorney and Guardian ad Litem for Jennifer Alexander and Nina Alexander.

FARMER, Judge.

This case involves a complaint filed by Larry Alexander ("Mr. Alexander") against Tennessee Farmers Mutual Insurance Company ("Tennessee Farmers") for insurance proceeds related to a December 4, 1990 fire occurring at a house owned by Mr. Alexander and insured by Tennessee Farmers.

Mr. Alexander and his former wife, Lula Alexander ("Mrs. Alexander"), purchased the house which is the subject of this litigation in May of 1985 for $17,000. Tennessee Farmers issued a policy of fire insurance on the house for the period from May 20, 1990 to May 20, 1991, with coverage of $15,000 for the premises, $7,500 for personal property, and $1,500 for other structures. The policy was in full force and effect at the time of the fire loss.

On December 4, 1990, the house and most of its contents were destroyed by a fire. Mr. Alexander subsequently filed a proof of loss and a claim for the policy limits of $24,000 less a $100 deductible with Tennessee Farmers. Tennessee Farmers denied Mr. Alexander's claim, contending that either Mr. or Mrs. Alexander, or someone under their control, intentionally set the fire.

In response to Mr. Alexander's complaint for the insurance proceeds, Tennessee Farmers filed an answer denying liability and counterclaimed, seeking the bad faith penalty provided by T.C.A. § 56–7–106 for the filing of a fraudulent claim. Tennessee Farmers also sought a declaration of rights as to the other insureds under the policy, Mrs. Alexander and the Alexanders' two daughters. The trial court granted Tennessee Farmers' motion that Mrs. Alexander be made a third-party defendant and that she and the children be joined as defendants to Tennessee Farmers' counterclaim seeking declaratory judgement as to their rights in the insured property. In the third-party complaint, Tennessee Farmers sought indemnity from Mrs. Alexander for whatever it might be obligated to pay Mr. Alexander under his original complaint. The court appointed a guardian ad litem to represent the daughters in their claim for proceeds under the policy. After a bench trial, the court below determined that "arson cannot be attributed to the insureds and allow[ed] recovery under the policy."[1]

---

1. The trial court ordered the proceeds of the policy dispersed as follows: $13,468.54 to Mrs. Alexander, $1,531.46 to the daughters, $2,750 to counsel for Mr. Alexander, and $1,260 to pay the guardian ad litem fee. The court ordered the remainder held by the clerk of the court "in lieu of Larry Alexander's obligation to provide the marital residence for the benefit of his ex-wife

On appeal, Tennessee Farmers presents the following issues to this court for review:

1. The transcripts of recorded statements of Larry Alexander and Lula Alexander, Exhibit 9, are admissible as admissions by a party opponent pursuant to Rule 803(1.2), Tennessee Rules of Evidence.

2. The transcripts of examinations under oath of Lula Alexander and Larry Alexander, Exhibit 10, are admissible as admissions by a party opponent pursuant to Rule 803(1.2), Tennessee Rules of Evidence.

3. The videotapes of the examinations under oath of Larry Alexander and Lula Alexander, Exhibit 11, are relevant and admissible pursuant to Rule 401, Tennessee Rules of Evidence.

4. The trial court erred in failing to find the fire was by or at the direction of Larry Alexander or Lula Alexander or both with the intent to cause a loss.

5. If the fire was by or at the direction of one insured person with the intent to cause a loss, no insured person may recover under the policy.

6. Larry Alexander or Lula Alexander or both are guilty of policyholder bad faith in bringing this action, and the appellant is entitled to the penalty of T.C.A. 56–7–106.

7. Appellant Tennessee Farmers Mutual Insurance Company is entitled to recover any monies it is compelled to pay under the policy from Larry Alexander or Lula Alexander or both as the party or parties responsible for the fire.

Tennessee Farmers' first three issues concern the trial court's alleged error in not admitting into evidence as party admissions the transcripts of recorded statements by the Alexanders, the transcripts of videotaped statements by the Alexanders, and the videotape recordings of the Alexanders' statements. The record reveals that the transcripts and videotapes were in fact entered in their entirety by Tennessee Farmers as exhibits during the trial. Tennessee Farmers

argues that the trial court should have considered these statements as a whole as admissions of party opponents pursuant to Rule 803(1.2) of the Tennessee Rules of Evidence, rather than simply for the limited purpose of impeachment. However, in its brief, Tennessee Farmers fails to indicate what the Alexanders allegedly admitted to in these statements, where any purported admissions may be found within these exhibits, and perhaps most importantly how it was prejudiced by the court's alleged error. *See* Rules of the Court of Appeals 6; T.R.A.P. 27(a) and 36(b); *Schoen v. J.C. Bradford & Co.*, 642 S.W.2d 420, 427 (Tenn.App.1982) (This court is not under a duty to minutely search a voluminous record to verify unsupported allegations in a brief).

▮▮▮ In its fourth issue, and the determinative issue in this appeal, Tennessee Farmers essentially raises the question of whether the trial court erred in finding that it had not proved the defense of arson. To succeed on a defense of arson, an insurance company must show by a preponderance of the evidence (1) that the loss was due to a fire of incendiary origin, (2) that the insured had an opportunity to set the fire, and (3) that he had a motive to do so. *McReynolds v. Cherokee Insur. Co.*, 815 S.W.2d 208, 211 (Tenn.App.1991). In a civil case, arson may be proved by a preponderance of the evidence and may be made by circumstantial evidence. *Id.* All three elements must be established by the party attempting to prove arson. *Walters v. Tennessee Farmers Mutual Insur. Co.*, 873 S.W.2d 691, 694 (Tenn.App. 1993).

Tennessee Farmers centers its argument on appeal around its contention that the court erred in finding that it had not proved the element of motive. We review the trial court's findings of fact *de novo* upon the record, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. T.R.A.P. 13(d).

With respect to the element of motive, the trial court stated as follows:

and children under the Divorce Decree." No objection has been made with respect to the

division of the policy proceeds.

Mr. and Mrs. Alexander both deny any involvement in the cause of the fire.

Larry and Lula Alexander were divorced on October 31, 1990. Pursuant to the divorce decree, Lula Alexander was to reside in the parties' jointly owned residence until the youngest of the parties' two children attained eighteen (18), or for approximately another 10 years. Larry Alexander was to be responsible for the monthly house payments under a land contract in the monthly amount of $226 per month. The residence had been acquired in 1985 by the Alexanders by means of a land contract with a purchase price of $17,-000. Some six days after the parties' divorce in October 1990, Larry Alexander paid off the balance due under the land contract in the approximate amount of $13,000. Mr. Alexander had lost his job in June 1990, and had received approximately $40,000 in severance pay. Upon paying the amount owed under the land contract, Mr. Alexander caused the deed to be made to himself personally and his former wife's name was not added to the deed. Mrs. Alexander was unaware of this transaction.

It is difficult to understand a motive on the part of either of the Alexanders in burning the residence. The obligation owed against the property in the amount of $13,000 had been paid by Mr. Alexander only a few days after the divorce. The structure was insured for only $15,000 and the only evidence as to the value of the property at the time of loss was that of Mr. Alexander who valued the property at $25,-000. He testified the increase in value over the original purchase price was due to his expending approximately $7,500 in improvements to the residence shortly prior to the fire loss.

Under the terms of the divorce decree, at any time the residence was sold the proceeds were to be divided equally between the Alexanders. Considering this provision in the divorce decree Larry Alexander would only receive $7,500, or one-half of the insurance proceeds, although he had just spent $13,000 to pay off the amount owed under the land contract and expended approximately $7,500 in improv-

ing the residence. He had no insurable interest in the personal property.

Why would one desire to burn a house for effectively only a $1,000 net gain, and potentially even a loss, and in the process destroy the personal property and effects of his children? It can be argued that Mr. Alexander thought he could extinguish his obligation to provide a residence for his children and former wife and this theory cannot be totally disregarded. The residence was not in good condition and would require maintenance expenditures over the next ten years with both parties to share equally in the maintenance. He testified he was of the impression that if he paid off the house he would have no further obligation to Lula Alexander and his children other than to permit them to live there and, if the house burned, he was not obligated to provide them with another place to live. As a result of having the deed titled in his name alone, Mr. Alexander may have thought he could receive all of the insurance proceeds. Again, it is observed he would receive only a minor net gain.

Why would Mrs. Alexander intentionally cause the loss? Mrs. Alexander would be giving up a place to live and in the process destroy all of her personal property and personal family effects in the residence in return for only $7,500 for her interest in the house and her recovery in the amount of $7,500 for loss of personal property. Only a few days prior to the fire loss Mrs. Alexander had purchased a new bedroom suite for the house which was scheduled to be delivered the day following the fire. It is argued that as Mrs. Alexander was unemployed and she was in what may be classified as a financial bind, she chose to cause the fire. Actually, the evidence reflects that at the time of the fire Mrs. Alexander was unaware the obligation owed against the residence had been paid by Mr. Alexander; her recovery would have been only for $1,000 in damages to the residence in addition to any personal property recovery if the obligation had still been owed. Such circumstances do not appear to constitute a likely motive for causing the fire.

The Court concludes that any monetary gain to be received by either of the Alexanders resulting from the fire loss does not appear to be a reasonable factor in determining whether either or both caused the fire. There is no evidence to support any other motive.

While the Court is of the opinion that it appears probable the fire was a result of arson and that either Mr. or Mrs. Alexander or both in concert with each other had the opportunity to set the fire, the Court cannot establish any reasonable motive the Alexanders had for causing the fire. Considering the conflicting evidence as to the cause of the fire coupled with a lack of motive, the Court does not attribute the fire to either of the Alexanders.

Asserting first that the trial court found that it proved the first two elements of the arson defense, Tennessee Farmers argues that the trial court erred by focusing its attention on whether the Alexanders would have financially gained from burning the house. Instead, Tennessee Farmers argues that "[t]his fire is about moving on, not making money. It's about staying even and getting on with life, not making a profit." According to Tennessee Farmers, Mr. Alexander believed that he would no longer be obligated to provide housing for Mrs. Alexander and his daughters if the house were destroyed, and that he was therefore motivated to burn the house by his desire to rid himself of this obligation. Mrs. Alexander, argues Tennessee Farmers, was under financial stress and wanted to burn the house to avoid costly repairs and so that she could replace the house with a trailer.

2. The trial court stated the following regarding the element of opportunity:

On December 4, 1990, the date the residence burned, Larry Alexander had visited Lula Alexander at her residence at about 8:15 a.m. Mr. Alexander testified the parties had an argument about how Mrs. Alexander was spending the child support paid by him. Mrs. Alexander testified there was no such argument and that their discussions related to visitation of the children.

Mr. Alexander left the residence at about 8:30 a.m. and the wife left shortly thereafter, although she was not certain of the exact time.

We first note that the trial court found that the Alexanders had the opportunity to set the fire and no question is raised as to the propriety of this finding.[2] As to the remaining elements, although the court initially stated that "it appears more probable there were two sources of origin of the fire and the fire was therefore likely due to arson," it concluded that "[c]onsidering the *conflicting evidence as to the cause of the fire coupled with a lack of motive,* the Court does not attribute the fire to either of the Alexanders." Contrary to Tennessee Farmers' assertion that the trial court also found that the fire was of an incendiary origin, the court appears to have equivocated as to this element before making a determination that motive had not been proved.

In *Huff v. State Farm Fire and Casualty Insur. Co.,* 716 S.W.2d 927, 929 (Tenn.App. 1986), the court found that the defense of arson had been proved where the insureds had serious financial difficulties, had been unable to sell their house and faced the prospect of making payments on two houses, and the house burned a short time after the furnishings were "mysteriously removed." The proof showed that the husband had only "sporadic employment" in the three years prior to the fire and that the family had outstanding debts which were in arrears, including a note on the house. *Id.* at 927.

In *McReynolds* the court held that circumstantial evidence of motive had been established where:

Plaintiff left certain valuables in his house in a safe he thought was fireproof. (It was not.)

Larry Alexander proceeded to go to Kentucky, according to his testimony, with his present wife, and he did not return until after the fire loss which occurred that same morning. Mrs. Alexander also left the residence within several minutes after Mr. Alexander's departure in order to go to her mother's residence.

After the parties' divorce, Mr. Alexander retained a key to the house. He could easily have returned to the residence after Mrs. Alexander's departure and obtained entry.

It is readily apparent that either Mr. or Mrs. Alexander, or both, had the opportunity to set the fire.

Plaintiff owed a $10,000 note which was due the day after the fire. (It was actually paid about 30 days later.)

Plaintiff's employment and income were not suggestive of a solid economic condition. . . .

He paid his gas (heat) bills irregularly, it was turned off for non-payment, and plaintiff turned it back on without authorization.

Plaintiff freely admitted a colorful life beginning when he was 14, when he was charged with fathering a child, and married the mother, continuing through nine marriages and divorces, holding property in his parents' names, bartering for property, not reporting income for taxation, and increasing the insurance on his home from $54,000 to $125,000 in the last policy purchased.

815 S.W.2d at 213.

Mr. Alexander testified that at the time of the fire he was employed and earning about $1,000 per month. In addition, Mr. Alexander testified that prior to the fire he had received, by way of profit sharing and stock, close to $40,000 after leaving his employment with Wal–Mart. At the time of the fire, Mr. Alexander was living with his girlfriend, having separated from Mrs. Alexander in June of 1990. He split his monthly expenses with his girlfriend who, although unemployed, was receiving $85 per week in unemployment benefits and had received around $10,000 from Wal–Mart through profit sharing when her employment there was terminated. Although Mr. Alexander acknowledged that he lived from one paycheck to the next, he also testified that his expenses totaled about $1,000 per month. Mr. Alexander testified that on November 6, 1990, he paid the loan balance of $13,363.00 then owing on the house. He also testified that prior to the entry of the Alexanders' divorce decree on November 28, 1990, he had purchased and installed new windows and storm doors for $7,125, and that he had also redone the bathroom.

Mrs. Alexander testified that she was unemployed at the time of the fire, and that she was barely able to meet her expenses. She also testified that prior to the fire she had received a $2,000 alimony payment from Mr. Alexander. Mrs. Alexander also stated that at the time of the fire she was receiving AFDC benefits in addition to the child support paid by Mr. Alexander. According to Mrs. Alexander, she and the girls lost many personal items in the fire, including recently purchased clothes, the girls' toys and picture albums. Mrs. Alexander also testified that Mr. Alexander had clothes and other personal items that burned in the fire.

After considering the foregoing testimony, and the entire record, we hold that the evidence does not preponderate against the trial court's finding that Tennessee Farmers did not prove the motive element. The evidence in the record supports the findings made by the court in its July 26, 1993 opinion regarding the lack of a motive based on financial gain as well as a lack of motive following the decisions of *McReynolds* and *Huff.*

Based upon our holding with respect to the defense of arson, we pretermit the remaining issues raised by Tennessee Farmers.

The trial court's judgment is affirmed. Costs of this appeal are taxed to Tennessee Farmers for which execution may issue if necessary.

TOMLIN, P.J. (W.S.), and CRAWFORD, J., concur.