PATRICIA ANN WOLFE, BETTIE )
L. ROBERTS, PATRICIA PELTON, )   Franklin Chancery
ODIE L. MANN, BOYD )   No. 14,240
STUBBLEFIELD, and RICHARD G. )
RAY, )
)   Appeal No.
)   01-A-01-9611-CH-00514
Plaintiffs/Appellants, )
)
VS. )
)
THE UNIVERSITY OF TENNESSEE, )
and THE UNIVERSITY OF )
TENNESSEE SPACE INSTITUTE, )
)
Defendants/Appellees. )

FILED

November 14, 1997

Cecil W. Crowson
Appellate Court Clerk

## IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

### APPEAL FROM THE CHANCERY COURT OF FRANKLIN COUNTY
### AT WINCHESTER, TENNESSEE

### HONORABLE WILLIAM DENDER (By Designation) JUDGE

MARY A. PARKER
STEPHEN C. CROFFORD
PARKER AND CROFFORD
209 Tenth Avenue So., Suite 511
Cummins Station
Nashville, TN 37203
ATTORNEYS FOR PLAINTIFFS/APPELLANTS

ALICE M. WOODY                          ALAN M. PARKER
Assistant General Counsel               LEWIS, KING, KRIEF,
THE UNIVERSITY OF TENNESSEE             WALDROP & CATRON
719 Andy Holt Tower                     One Centre Square
Knoxville, TN 37908-0170                Knoxville, TN 37901

BEN P. LYNCH
LYNCH, LYNCH & LYNCH
P.O. Box 310
Winchester, TN 37398
ATTORNEYS FOR DEFENDANTS/APPELLEES

### AFFIRMED AND REMANDED

HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:
SAMUEL L. LEWIS, JUDGE

CONCUR IN SEPARATE OPINION
WILLIAM C. KOCH, JR., JUDGE

| PATRICIA ANN WOLFE, BETTIE | ) | |
|---|---|---|
| L. ROBERTS, PATRICIA PELTON, | ) | Franklin Chancery |
| ODIE L. MANN, BOYD | ) | No. 14,240 |
| STUBBLEFIELD, and RICHARD G. | ) | |
| RAY, | ) | Appeal No. |
| | ) | 01-A-01-9611-CH-00514 |
| Plaintiffs/Appellants, | ) | |
| | ) | |
| VS. | ) | |
| | ) | |
| THE UNIVERSITY OF TENNESSEE, | ) | |
| and THE UNIVERSITY OF | ) | |
| TENNESSEE SPACE INSTITUTE, | ) | |
| | ) | |
| Defendants/Appellees. | ) | |

# O P I N I O N

Six plaintiffs joined in this age discrimination suit under the Tennessee Human Rights Act, T.C.A. §§ 4-21-101 et seq.. The Trial Court rendered summary judgment dismissing the suits of all plaintiffs, who have appealed, submitting a single issue for review and the correctness of the summary judgment.

## THE CASE

On September 26, 1994, the six captioned plaintiffs filed their joint complaint against the captioned defendants, alleging that on or about February 14, 1994, plaintiffs were forced by defendants to accept a lay-off or forced to take early retirement in violation of the age discrimination provisions of the Tennessee Human Rights Act, and in breach of their contract of employment.

The action for breach of contract was dismissed by agreed order.

The defendants answered, denying that the complaint states a claim for which relief can be granted, admitting the employment of plaintiffs, admitting that the Space Institute was an integral part of the University which is an agency of the State subject to suit under the Tennessee

Human Rights Act, T.C.A. §§ 4-21-102 et seq.. The answer admits that plaintiffs were scheduled to be laid off or assigned a reduced work schedule, but not because of their age, admits that all of plaintiffs were over 40 years of age, but denies that plaintiffs, or any of them were subjected to discrimination because of age, or that plaintiffs were replaced by other employees of a younger age. The answer asserts that the actions complained of were made necessary by a reduction in the funds available for operation of the Institute.

An agreed order struck jury demands from the pleadings.

Defendants amended their answer to particularize various defenses.

On November 30, 1995, defendant University moved for summary judgment as to all plaintiffs.

On May 6, 1996, the University filed a Supplement to its Motion for summary judgment in regard to Bettie L. Roberts.

On June 18, 1996, plaintiffs were permitted to amend their complaint in regard to Odie Mann.

On July 1, 1996, the Trial Judge filed separate memorandum as to the suits of five of the plaintiffs.

On July 12, 1996, the Trial Court entered separate orders dismissing the suits of each of the plaintiffs by summary judgment.

On July 27, 1996, the Trial Judge filed a separate memorandum as to the suit of Patricia Ann Wolfe.

The memorandum of the Trial Judge discusses separately the facts relating to each plaintiff. This Court will therefore review the findings separately.

1.      The findings of the Trial Court as to Patricia Ann Wolfe are:

Patricia Ann Wolfe was the only employee in the job classification of Senior Administrative Assistant at UTSI. She was not terminated in the March 1994 RIF, but she was advised that UTSI intended to reduce her employment to 50% time. She declined to accept reduced employment and elected instead to retire, and she receives retirement pay from the Tennessee Consolidated Retirement System. She also received unemployment benefits. She claims she was constructively discharged.

She would have been returned to 100% employment and benefits by July 1, 1994, if she had accepted the reduced hours of employment decision concerning the March 1994 RIF. All remaining employees who accepted the reduced employment in the March 1994 RIF were returned to 100% employment as of July 1, 1994.

Ms. Wolfe claims Ms. Linda Crosslin should have been included in the RIF instead of her, because Ms. Crosslin is younger and had been trained by Ms. Wolfe. Ms. Crosslin was Executive Assistant to the Vice President, a job classification admittedly different to Ms. Wolfe's classification. [Wolfe deposition, p. 151]

The job classification of Senior Administrative Assistant was not filled. The evidence before the Court indicated the job functions and duties which she performed were spread among existing employees, including the assignment of her duties to the existing Executive Assistant, Ms. Linda Crosslin. However, there are details concerning the distribution of those duties which the Court has been unable to locate, and the Court feels it is necessary to supplement the record as specifically set forth later in this memorandum.

Ms. Wolfe said she retired in order to be eligible for health insurance as a retired state employee.

She filed a claim with the Social Security Administration for disability benefits claiming that she was "unable to work because of allergies and asthma." [Wolfe deposition 2-29-96, p.7 and Ex. 1] She supported her claim with statements from her doctor. [Wolfe, p. 164-166]. The Social Security Administration denied her claim on 8-22-94, and she filed a request for reconsideration. [Wolfe, p.7]

Ms. Wolfe claims she was replaced by Mary Helen Britton, and that there was a promotional announcement dated

-4-

March 25, 1994, advertising for the position formerly held by Ms. Wolfe; and a memorandum, dated 4/28/94, announced that Ms. Mary Helen Brittain was selected as McCay's Executive Assistant. Excerpts from that memorandum state: "This was a new position created to support the vice president's office" and "The new position was necessary due to the retirement of the administrative assistant and in addition, the Executive Assistant to the Vice President, Ms. Linda Crosslin, taking the position of Special Events Coordinator."

Defendants claim Ms. Wolfe does not show a prima facie case because (1) she was not terminated, and (2) she was not replaced by a younger worker. Defendants also claim she is barred by judicial estoppel, because of her allegations in her claim for social security disability.

Ms. Wolfe asks for reinstatement, and she supports this request with a statement from Dr. Stephen Hunter Bills.

At the present time, the Court reserves judgment on the Motion for Summary Judgment or Partial Summary Judgment concerning Ms. Wolfe, including the question of judicial estoppel.

As soon as possible, and at least within 15 days from the date this memorandum is received, counsel for the defendants will please supplement the record, or point specifically to the evidence, in order that the Court can determine (1) the date Ms. Wolfe retired, (2) the specific duties of Ms. Wolfe that were distributed to existing employees and the names and job titles of those employees, (3) whether these employees had other duties they performed in addition to the duties of Ms. Wolfe which were distributed to them, (4) the date Ms. Linda Crosslin accepted the job of Special Events Coordinator, and (5) the specific duties assigned to Ms. Mary Helen Britton and how those duties were different from the duties of Ms. Wolfe, if there were any differences.

Counsel for Ms. Wolfe may supplement the record, if they choose, within 10 days from the date they receive the supplement to the record filed by defense counsel.


### Memorandum Concerning Patricia Ann Wolfe

This is a continued consideration of the Motion for Summary Judgment or Partial Summary Judgment filed against Patricia Ann Wolfe. The defendants seek summary judgment on the ground that Ms. Wolfe has not established a prima facie case of age discrimination.

In order to be successful in this case, it is basic that the plaintiff must get over the hurdle of constructive discharge,

otherwise there has been no discharge of the employee. This is considered to be a factual issue which would have to be determined by the trier of fact; however, it is not necessary that this issue be reached at this time.

The details of Ms. Wolfe's situation were set forth in the Court's Memorandum entered on July 1, 1996, and all portions of that memorandum pertaining to Ms. Wolfe are incorporated herein by reference.

This Court notes that several times, orally and in writing, it has been stated that Dr. McCay said to Bettie Roberts that he was going to get rid of Ms. Wolfe and Linda Crosslin and replace them with younger girls with happy smiling faces. Plaintiff's brief even states, "Dr. McCay indicated that he wanted to move Ann Wolfe from her position, and the testimony, under oath, by Bettie Roberts was that he was going to replace her with a younger happy, smiling face."

In fact, Bettie Roberts' deposition of 9/13/95 states:

He asked me while we were in the meeting what I thought of Ann Wolfe and Linda Crosslin. And I said, "Well you know, what do you mean?" And he said, "Well, what do you think about them?" I said, "Well, I know Ann real well. We've worked together for years. I don't know Linda that well." I said, "I know Ann is very capable. She's had, you know, many years experience."

And he told me that sometimes those two girls, they had ups and downs. They weren't always happy and he wanted -- he said, "What I would like to have is two young girls in there with happy, smiley faces so that when anyone came in, no matter who, they would be greeted the same and they would be -- see these happy, smiley faces." That was just an off-side comment.

At the request of the Court, all parties have supplemented the record through supplemental affidavits, and the Court will summarize important portions of such evidence below.

### SUPPLEMENTAL AFFIDAVIT OF
### T. DWAYNE McCAY, Ph. D.

Ms. Wolfe notified Dr. McCay, by Memorandum dated February 21, 1994, that she would be retiring from the UT Space Institute on March 2, 1994.

-6-

Dr. McCay expected Ms. Wolfe to continue work at 50%, and it was his hope that all employees accepting reduced hours would be returned to full employment by July 1, 1994. If Ms. Wolfe had accepted employment at 50%, she would have been returned to 100% status on July 1, 1994. Ms. Wolfe's duties were limited to answering the phone and assisting in the preparation of correspondence.

When Ms. Wolfe retired, her duties were spontaneously absorbed by the Executive Assistant, Ms. Linda Crosslin, who continued to perform her primary duties. No other arrangements had been made because it was expected that Ms. Wolfe would work 50% time. When Ms. Wolfe refused to provide 50% support to the office, Dr. McCay gave additional thought to the staffing requirements.

On March 24, 1994, UTSI issued a promotional announcement to recruit a new Executive Assistant from existing UTSI employees.

On April 4, 1994, Ms. Crosslin's title was changed to Special Events Coordinator; and as such she had full responsibility for planning and conducting all special events conducted by UTSI, including professional, social, and service events. She was also assigned responsibility for management of the UTSI Industry-Student Center, which contains the cafeteria and dormitory. Ms. Wolfe was not assigned any of these duties while Dr. McCay has been Vice President.

Ms. Crosslin's duties required her own secretarial support, and she was moved to a larger office, leaving the Vice President's office with no direct support.

Ms. Mary Helen Brittain was selected as the new Executive Assistant, effective April 24, 1996. Her duties included, in addition to maintaining Dr. McCay's calendar and preparing correspondence, the authoring of some of his correspondence, representing him in some meetings, reorganizing and upgrading the computer and office electronics, including software, supervision of six research group secretaries (formed later), and chairing the Cafeteria Committee. None of these other duties had been assigned to either Ms. Crosslin or Ms. Wolfe.

After Ms. Brittain was selected to serve in the expanded role of Executive Assistant, UTSI's long-time Public Affairs Coordinator retired, and that position was split into two positions, one full-time and one part-time. An internal search was made for a replacement, and Ms. Brittain applied for the full-time position. However, Ms. Brittain's position was included in a further RIF in October 1995, as a result of the continuing money crisis, and Ms. Brittain is no longer at UTSI.

Ms. Brittain was replaced by a non-exempt hourly paid secretary, Ms. Dee Robinette. Her job title was and is Administrative Services Assistant, and she is not a replacement for either the Senior Administrative Assistant or Executive Assistant position. Some of the previous Executive Assistant's duties have been redistributed and some are no longer performed at all.

As far as Dr. McCay is concerned, the position of Senior Administrative Assistant has been deleted.

None of the above evidence stated in Dr. McCay's supplemental affidavit is contradicted by Ms. Wolfe's supplemental affidavit.

### SUPPLEMENTAL AFFIDAVIT OF PATRICIA ANN WOLFE

Ms. Wolfe states in her supplemental affidavit, "All of the duties listed in the promotional announcement are duties that I was very capable of performing and duties that I had performed for the individuals that were the Deans prior to Dr. Dwayne McCay taking his position."

Ms. Wolfe also includes in her affifavit (sic) a copy of Exhibit 2 to Ms. Wolfe's deposition of 9/12/95 and Exhibit "CC" to Plaintiff's Summary Judgment Response. A comparison of these documents shows many comparable items; however, the comparison also shows there are numerous additional duties listed on Exhibit "CC" which are not listed on Exhibit 2.

The Court now turns to consideration of judicial estoppel. In order to maintain an age discrimination case, the plaintiff must be ready, able, and qualified to perform the job plaintiff claims was lost as a result of age discrimination.

- - - -

In the opinion of the Court, Ms. Wolfe has not established a prima facie case of age discrimination; because the evidence, viewed in favor of Ms. Wolfe and allowing all reasonable inferences in her favor, does not establish either (1) she was ready, able, and qualified to perform the job she claims was lost as a result of age discrimination, or (2) she was replaced by another employee, or that younger employees in the same position were treated more favorably. Her duties were assumed by other existing employees, and her position has essentially been eliminated. There is no evidence that age was a factor in the employment decision concerning Ms. Wolfe and that "but for" this factor the action would not have been taken.

The Motion for Summary Judgment concerning Ms. Wolfe is sustained.

The findings of the Trial Court as to Bettie L. Roberts are:

Bettie L. Roberts was the Registrar at the UTSI, and was the only employee in that department with that job classification. She was not terminated in the March 1994 RIF, but she was notified that UTSI intended to reduce her employment to 75% time. She continued to work at the 75% level for a period of one month, but at that time decided not to continue employment at the 75% level. There is a controversy over her being able to continue to be insured at 75% time. She claims Mr. Beardsley, an employee and agent of UT at the UT Retirement Office told her she should retire in order to keep insurance; but in her deposition she admitted she could continue insurance. It seems there is a question whether she could draw her benefits, including insurance, if she were laid off at 75%.

The position of Registrar was not filled. Her supervisor, Dr. Edward Gleason, assumed the professional duties of Registrar, and Mary Frances Ferber, the Recorder, continued performing the clerical duties. Some functions previously performed by Ms. Roberts are not performed in the Graduate office of UTK.

Ms. Ferber was hired and trained by Ms. Roberts as the new recorder, the position held by Ms. Roberts before she was appointed Registrar in 1983. Ms. Ferber was a clerical employee before Ms. Roberts retired, and she performed duties for Ms. Roberts. The Recorder was responsible for the data base, and her skills and duties were different from Ms. Roberts.

Ms. Roberts would have been returned to 100% employment by July 1, 1994, as were all others who accepted reduced hours.

On June 11, 1994, she filed a Disability Report in order to claim Social Security Benefits. On June 27, 1994, she executed an Application for Disability Benefits, where she claimed she was unable to work on April 1, 1994, because of her "disabling condition." Her claim for Social Security Disability Benefits was denied, and she filed a request for reconsideration of her claim on September 13, 1994.

Plaintiff claims: (1) constructive discharge and (2) she could have performed the duties of the employees to whom her duties were assigned.

Defendants claims she fails to state a prima facie case because (1) she was not terminated, (2) she was not replaced by a younger employee, and (3) her duties were reassigned to existing employees or they are no longer being performed at UTSI. Defendants also claim she is barred by judical (sic) estoppel, because of her allegations in her claim for social security disability.

She also claims in her affidavit that she is able to resume her duties as Registrar, and she asks for reinstatement.

In the opinion of the Court, Ms. Roberts has not established a prima facie case of age discrimination; because the evidence, viewed in favor of Ms. Roberts and allowing all reasonable inferences in her favor, does not establish that she was replaced by another employee, or that younger employees in the same position were treated more favorably. Her position has been abolished, and her duties have been distributed to other existing employees. There is no evidence that age was a factor in the employment decision and that "but for" this factor the action would not have been taken.

The Motion of Summary Judgment concerning Ms. Roberts is sustained.

The findings of the Trial Court as to Patricia A. Pelton are:

Patricia A. Pelton was employed as a switchboard operator and then became classified as the telephone operator supervisor. Her duties were to answer the phone, and she acted as the receptionist for the Institute. When UTSI decided to acquire an automated telephone system, Ms. Pelton was assigned to begin performing some clerical work for the Director of Development.

Ms. Pelton claims she was working for Campaign 94 when she was terminated, and she claims she was replaced by Betty Wilkerson in Campaign 94.

She claims, after her initial termination, favoritism was shown a younger employee, Dee Dee Jones, by hiring her at $6.50 per hour. UTSI had only offered Ms. Pelton $5.00 per hour (along with 2 other employees) to temporarily answer the phone. After Dee Dee Jones left, Ms. Pelton was offered $6.50 per hour to answer the phone temporarily for 2 weeks. She actually worked in that capacity for approximately 3 months until the new phone system became fully operational. There is no longer a switchboard operator at UTSI, and the position was completely phased out.

After the March 1994 RIF, there were no clerical workers in the Development Office (sic), but later funding became available for clerical assistance in that office. However, the new job classification was a different position from the one Ms. Pelton was training for, and the new position required greater skills than Ms. Pelton possessed. Actual job duties were different from the work Ms. Pelton performed for the Director of Development. Ms. Pelton does not dispute that the subsequent job in the Development Office required more skills than she possessed. [Pelton deposition, 104:25-105:5]

Defendants claim Ms. Pelton does not state a prima facie case because (1) her job classification as telephone switchboard operator supervisor was no longer needed, being deleted by the installation of automatic equipment, and (2) her job classification was not replaced by a younger worker.

In the opinion of the Court, Ms. Pelton has not established a prima facie case of age discrimination; because the evidence, viewed in favor of Ms. Pelton and allowing all reasonable inferences in her favor, does not establish she was replaced by another employee, or that a younger employee in the same job was treated more favorably. Her position has been abolished because an automated telephone system has been installed. The Court is not of the opinion that the mere hiring of Ms. Dee Dee Jones, on a temporary basis, at $6.50 per hour, after Ms. Pelton had only been offered and refused $5.00 per hour, is such favoritism as would trigger an age discrimination case. This is true especially when Ms. Pelton accepted temporary employment in that job at $6.50 per hour when Ms. Jones left, and Ms. Pelton worked in that capacity for approximately 3 months.

There is no evidence that age was a factor in the employment decision and that "but for" this factor the action would not have been taken.

The Motion for Summary Judgment concerning Ms. Pelton is sustained.

The findings of the Trial Court as to Odie L. Mann are:

Odie L. Mann was the only employee in the cafeteria with the job classification of Senior Chef. The job was not filled after she retired, and UTSI reduced the overall scope and level of the food services offered at its cafeteria. Previously, several daily hot plate lunches were offered, but now it is mostly a fast food type service and a soup/salad bar. As of November 1995, the staffing of the cafeteria had been reduced to only 2 part time employees.

Ms. Mann complains that Bea Hill transferred into the cafeteria, but Bea Hill replaced Valerie Watson, who was already in the cafeteria and later resigned. Ms. Hill was 58 when she replaced Ms. Watson.

Ms. Mann's termination date was delayed until May 1994, in order for her to be able to receive her longevity pay and become eligible at 62 years of age to draw her Social Security Benefits. [Mann deposition 2/29/96, p. 31-32]

On October 20, 1995, Ms. Mann was seriously injured in an auto accident. On February 9, 1996, her attorney filed suit on her behalf in Franklin County, Tennessee, and the suit claims that "(S)he is now permanently injured, has lost the capacity to earn, has lost the ability to enjoy life, and has

suffered and continues to suffer great pain, for all of which she is entitled to recover." [See Mann, p. 3 paragraph 11]

Defendants claim Ms. Mann fails to state a prima facie case because (1) the position of Senior Chef was not filled, and (2) she was not replaced by a younger worker. Defendants also claim she is barred by judicial estoppel, because of allegations in her suit concerning the auto accident; but that could only affect events following the auto accident.

In the opinion of the Court, Ms. Mann has not established a prima facie case of age discrimination; because the evidence, viewed in favor of Ms. Mann and allowing all reasonable inferences in her favor, does not establish that she was replaced by another employee, or that younger employees in the same job were treated more favorably. Her position as Senior Chef has been abolished, the overall operation in the cafeteria has been modified, and there are only two part time employees in the cafeteria at this time. There is no evidence that age was a factor in the employment decision and that "but for" this factor the action would not have been taken.

The Motion for Summary Judgment concerning Ms. Mann is sustained.

The findings of the Trial Court as to Boyd Stubblefield are:

Boyd Stubblefield was employed as a media production assistant, he was the only employee with that job classification, and he was the only full time employee in that department. He primarily functioned as the photographer for UTSI. He was not terminated, but in the March 1994 RIF, he was advised that UTSI intended to reduce his employment to 50% time. He claims this was a constructive discharge.

He has not presented evidence that he meets the fourth criteria of McDonnell Douglas, or that a younger employee in the same job was treated more favorably. Mr. Stubblefield claims Ms. Linda Horton was treated more favorably, but it is clear Ms. Horton was not in the same job and did not have the same responsibilities. He was not replaced by a younger employee, and his duties were either distributed to existing employees or left unperformed. Scientific photography is either not being done, or is being performed by existing research workers. Public relations photography was done by an older employee until his retirement, and upon that employee's retirements, these duties were spread among other employees. UTSI no longer developes film and does not print photographs in-house.

In the opinion of the Court, Mr. Stubblefield has not established a prima facie case of age discrimination; because the evidence, viewed in favor of Mr. Stubblefield and allowing all reasonable inferences in his favor, does not

establish that he was replaced by another employee, or that a younger employee in the same job was treated more favorably. His duties have been distributed to existing employees, left undone, or not done in-house. There is no evidence that age was a factor in the employment decision and that "but for" this factor the action would not have been taken.

The motion for Summary Judgment concerning Mr. Stubblefield is sustained.

The findings of the Trial Court as to Richard G. Ray are:

Richard G. Ray was employed as the supervisor in the Gas Dynamics Laboratory, and he was the only employee in that job classification within that department. He supervised only two other workers in his department. The evidence does not show that he meets the fourth requirement of the McDonnell Douglas test. He was not replaced by a younger employee. His job was deleted entirely in the March 1994 RIF, and the supervisory responsibilities of several laboratories were merged. Another laboratory supervisor, Mr. Goodman, was selected to be the supervisor over the laboratories. Mr. Goodman had more senority than Richard G. Ray, and in addition, Mr. Goodman had expertise different from Mr. Ray.

He complains that Ricky Meeker should have been laid off instead of him, but it is clear that Meeker was in a different job classification, that he was not a supervisor, and that he was and is a technician level individual performing maintenance.

In the opinion of the Court, Mr. Ray has not established a prima facie case of age discrimination; because the evidence, viewed in favor of Mr. Ray and allowing all reasonable inferences in his favor, does not establish that he was replaced by another employee, or that a younger employee in the same job was treated more favorably. His position has been abolished, and the supervisory responsibilities of several laboratories were merged.

The Motion for Summary Judgment against Mr. Ray

is sustained.

## THE APPLICABLE LAW

The party seeking a summary judgment has the initial burden of demonstrating by undisputed competent evidence that the moving party is entitled to summary judgment as a

matter of law. A conclusory assertion that the non-moving party has no evidence is clearly insufficient. Competent evidence that the non-moving party has no evidence may be sufficient. When the initial burden of the movant has been satisfied, the burden of proceeding shifts to the opponent of the motion to present competent evidence and/or law which negatives the ground of the motion. *Byrd v. Hall*, Tenn. App. 1993, 847 S.W.2d 208.

In respect to employees' suits for unlawful discrimination, the motion of the employer for summary judgment must be supported by more than a simple conclusory oath that "I did not discriminate." The employer must "articulate a legitimate lawful reason" for the discharge or discrimination of the employee. *Brenner v. Textron Aerostructures*, Tenn. App. 1993, 874 S.W.2d 579, *Bruce v. Western Auto Supply Co.*, Tenn. App. 1984, 669 S.W.2d 95. This does not mean that the employer must initially present competent evidence of facts supporting the reason for the management decision. It is sufficient to present the affidavit of the management official that he had received reports of employees which he deemed sufficient to support this action.

When the employer has thus supported his action, the burden of proceeding shifts to the employee to present competent evidence that the adverse report received by management was untrue, thus creating an issue of material fact which would render summary judgment improper. *Silpacharin v. Metropolitan Government*, Tenn. App. 1990, 797 S.W.2d 625, *Bruce v. Western Auto Supply Co.*, Tenn. App. 1984, 669 S.W.2d 95, and authorities cited therein.

In these suits by employees for age discrimination, the ultimate issues are: (1) whether the employee was a member of a protected class, (2) Whether the employee was subjected to adverse employment action, (3) Whether he or she was qualified for the position held, and (4) he or she was replaced by a younger person. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 37 L. Ed.2d 668 (1973). Such may be shown by direct, circumstantial, or statistical evidence. *Bruce v. Western Auto Supply Co., Supra.*

While statistical testimony has been admitted and considered in some cases, it is generally looked upon with caution or suspicion. The inquiry is how a particular individual has been treated, rather than any practice in the industry or even in the general practice or policy of the employer. *Cumpiano v. Banco Santander P.R.*, 1st Cir. 1990, 902 F.2d 148; *Mack v. Great Atl. & Pac. Tea Co.*, 1st Cir. 1989, 871 F.2d 179; *Walther v. Lone Star Gas Co.*, 5th Cir. 1992, 977 F.2d 161; *Gadson v. Concord Hospital*, 1st Cir. 1992, 966 F.2d 32.

In the present case, the Trial Court held that the statistical evidence offered by plaintiffs in response to defendant's motion was an insufficient response to defendant's articulated legitimate reason for the action taken.

Appellants argue that the affidavit of Dr. McCay as to the reasons for his decisions concerning plaintiffs is not sufficient to support defendant's motion for summary judgment because Dr. McCay kept no notes of his reasons which renders them suspect, thereby providing a basis for consideration of the testimony of the statistician. This Court agrees with the holding of the Trial Court that Dr. McCay's credibility was not impeached and that the statistics were insufficient to contradict his testimony.

Some of the plaintiff's arguments cannot be considered because they do not comply with Rule 6(b) of the Rules of this Court by citing the pages of the record where evidence may be found. *Alexander v. Tennessee Farmers Mutual Insurance Co.*, Tenn. App. 1995, 905 S.W.2d 177, *Pearman v. Pearman*, Tenn. App. 1989, 781 S.W.2d 585.

This Court concurs in all of the above findings of the Trial Court, and also finds that the efforts of plaintiffs to impeach the character of Dr. McCay were not sufficiently supported.

The judgment of the Trial Court dismissing these suits are affirmed. Costs of this appeal are taxed to the plaintiffs. The causes are remanded to the Trial Court for further necessary proceedings.

**AFFIRMED AND REMANDED**

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION


CONCUR:


_____
SAMUEL L. LEWIS, JUDGE


CONCUR IN SEPARATE OPINION:
WILLIAM C. KOCH, JUDGE