IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 2000 Session

## CALVIN JOHNSON v. ALLSTATE INSURANCE COMPANY v. STEVEN UTAH JOHNSON

**A Direct Appeal from the Circuit Court for Grundy County
No. 5954     The Honorable Buddy D. Perry, Judge**

---

### No. M1999-01639-COA-R3-CV - August 16, 2000

---

Insured sued his insurer to recover policy coverage due on a fire loss to his automobile after the insurer denied coverage under the fraud provision of the policy. Judgment was entered on a jury verdict for the insured, and the insurer has appealed.

**Tenn.R.App.P. 3, Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded.**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Michele E. Cooper; Michael P. Mills, Nashville, For Appellant, Allstate Insurance Company

Howell G. Clements; Carl E. Shiles, Jr., Chattanooga, For Appellee, Calvin Johnson
Earlene Y. Speer, Altamont, For Appellee Steven Johnson

### OPINION

Defendant, Allstate Insurance Company, appeals the judgment of the trial court on the jury verdict awarding plaintiff, Calvin Utah Johnson, $11,825.00.

In December, 1995, plaintiff purchased a 1994 Mitsubishi Eclipse automobile primarily for his son, Stephen Johnson, and the vehicle was titled in both names. Plaintiff procured insurance coverage from defendant, Allstate. Steven Johnson was in the U. S. Army at the time that the vehicle was purchased and used the vehicle when he was home on leave. Steven was discharged from the army in February of 1996, and on or about March 25, 1996, the vehicle was subject to a total fire loss. Plaintiff reported the total fire loss claim to Allstate on March 26, 1996, and after an investigation, Allstate denied the claim on the basis of the fraud provision of the policy. On March 13, 1997, plaintiff filed suit against Allstate to collect the proceeds of the policy alleging that the fire was from an unknown origin which totally destroyed the vehicle. Allstate's answer denied that

plaintiff was entitle to recover based upon the policy provisions dealing with fraud on the part of an insured. Allstate also filed a counterclaim against plaintiff alleging that Allstate is entitled to the bad faith penalty, because plaintiff did not bring the action in good faith. Allstate also filed a third party complaint against Steven Johnson for judgment over against him in the event that liability was adjudged against Allstate in the original complaint.

The case was tried before a jury and was submitted to the jury on special interrogatories. The interrogatories and answers thereto are as follows:

1. Did the Plaintiff make material misrepresentation on the proof of loss with the intent to deceive?

Answer: No.

2. Was the fire loss to the 1994 Mitsubishi Eclipse intentional, in violation of the "accidental loss" provision of the policy?

Answer: No.

3. Did Steven Utah Johnson, son of Calvin Utah Johnson, cause the willful burning of the 1994 Mitsubishi Eclipse?

Answer: No.

4. Did Calvin Utah Johnson cause or consent to the willful burning of the 1994 Mitsubishi Eclipse?

Answer: No.

5. Is Calvin Johnson entitled to a verdict of $11,825 as established by the NADA book as the fair market value of the vehicle?

Answer: Yes.

Judgment was entered on the jury verdict for plaintiff in the amount of $11,825.00. Allstate's post-trial motion for a new trial or in the alternative for judgment notwithstanding the verdict was denied, and Allstate has appealed presenting the following issues, as stated in its brief:

I. Did the Court err in failing to define an "insured" as including Steven Johnson as prescribed by the Allstate Indemnity Tennessee Automobile Policy?

II. Did the Court err in ruling that the multiple prior fire losses of Calvin Johnson were not relevant to the case-in-chief, preventing Allstate from proving two of the three elements of its arson defense?

III. Did the Court err in bifurcating the trial of this matter?

IV. Was Allstate unduly prejudiced by the Court's procedural rulings to the point of precluding it from receiving a fair trial?

V. Did the Court err in not finding that Calvin Johnson failed to meet his burden of proving the fire loss to the vehicle was accidental, as required by the policy?

VI. Did the Court improperly instruct the jury on Allstate's burden of establishing the defense of misrepresentation of the loss, thereby committing reversible error?

VII. Did the Court err in making a number of invalid evidentiary rulings, prejudicing Allstate to the point of precluding a fair trial?

VIII. Did the Court err in proffering an incorrect jury verdict form, thereby confusing the jury and committing prejudicial, reversible error?

As a preliminary matter, we observe that technically Allstate is not entitled to review of many of its issues. Tenn.R.App.P. 3 (e) provides in pertinent part:

> Provided, however, that in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was ***specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.*** . . . (Emphasis added).

The motion for new trial filed by Allstate does not specifically set out any alleged error, but refers to its memorandum of law in support of its motion for a new trial. Normally, a memorandum of law is not filed as part of the record, although it is a part of the record in this case. Moreover, the specifications of the alleged errors in the memorandum do not comply in many instances with the specificity required by Rule 3(e). However, in this instance, the Court will treat the memorandum as a part of the motion for a new trial and consider the issues as presented.

We will now consider the issues:

I. Did the Court err in failing to define an "insured" as including Steven Johnson as prescribed by the Allstate Indemnity Tennessee Automobile Policy?

Allstate's first issue is somewhat confusing. It appears to the Court that the first issue is really a nonissue, inasmuch as the jury found that neither plaintiff nor Steven intentionally set fire to the vehicle. Nevertheless, we will discuss the issue, because Allstate's assertions in its brief are incorrect. Allstate asserts that the insured is defined as Calvin Johnson and any family member and individuals utilizing the insured's automobile, which included Steven and Linda Johnson. Allstate points out that Steven Johnson was residing at the residence owned by Calvin Johnson, is related by blood, was the named driver on the declaration page, was operating a covered automobile, and thereby is an insured under the policy. What Allstate fails to recognize is that the definition relied upon in its assertion is the definition that applies only to the liability part of the policy. The definition applicable to Part D, Coverage For Damage To Your Automobile, is contained in the definition section of the policy, and states:

DEFINITIONS

A. Throughout this policy, "you" and "your" refer to:

1. The "named insured" shown in the Declarations; and

2. The spouse if a resident of the same household.

The trial court correctly noted that Steven Johnson was not an insured as to Part D of the policy. Moreover, even if Steven Johnson was considered an insured under Part D of the policy, the provision of the policy relied upon by Allstate would not prevent coverage to Calvin Johnson. The policy provides:

Fraud

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

Apparently, Allstate misconstrues the language of this provision. We view it as saying that Allstate provides no coverage for an insured who has made fraudulent statements or engaged in fraudulent conduct. It does not state that coverage is not provided for any insured when any other insured has made fraudulent statements or engaged in fraudulent conduct. For the reasons stated, this issue is without merit.

-4-

II. Did the Court err in ruling that the multiple prior fire losses of Calvin Johnson were not relevant to the case-in-chief, preventing Allstate from proving two of the three elements of its arson defense?

Allstate asserts that the trial court's ruling that Calvin Johnson's prior fire losses were not relevant to the case in chief precluded Allstate from proving two of the three requirement elements of an arson defense; that is, motive for destruction of the property, and the opportunity to collect insurance proceeds by being fully aware of the claims process. Allstate contends that the evidence was relevant under Rule 401, Tenn.R.Evid., since the case involves allegations of destruction of property due to arson and insurance fraud. Allstate also argues that plaintiff's prior fire losses were admissible under Tenn.R.Evid. 404 (b) for the purposes of showing knowledge, motive, common scheme, or plan, opportunity, fraudulent intent, and absence of mistake or accident. The pertinent rules provide:

**Rule 401.  Definition of "Relevant Evidence"**
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

**Rule 404.  Character evidence not admissible to prove conduct; exceptions; other crimes.**

\*        \*        \*

**(b) Other Crimes, Wrongs, or Acts.** - Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:
* * *
(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and
(3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

**Rule 403.  Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.**  -
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of

undue delay, waste of time, or needles presentation of cumulative evidence.

In *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439 (Tenn. 1992), the insured sued to recover policy proceeds for fire damage to her home. In holding that the trial court had not erred in excluding evidence of plaintiff's allegedly prior fraudulent dealings with other insurers, the Court said:

> [T]he defendant contends that given the difficulty of proving arson such evidence of the plaintiff's alleged past dealings should have been admitted. The defendant claims the exclusion of this evidence deprived it of the ability to show the plaintiff was consciously engaged in a scheme of lying to insurance companies for monetary gain.
>
> We disagree that such evidence must necessarily be admitted. An inquiry into character is not rejected so often because it is irrelevant; "on the contrary it is said to weigh too much with the jury and to so over persuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Michelson v. United States*, 335 U.S. 469, 475-76, 69 S.Ct. 213, 218, 93 L.Ed. 168 (1948). This legal maxim applies in civil cases; litigants must be accountable only for the cause of action brought against them or affirmative defenses asserted.
>
> In Tennessee admissibility of evidence is within the sound discretion of the trial judge. When arriving at a determination to admit or exclude even that evidence which is considered relevant trial courts are generally accorded a wide degree of latitude and will only be overturned on appeal where there is a showing of abuse of discretion. *Strickland v. City of Lawrenceburg,* 611 S.W.2d 832 (Tenn. Ct. App. 1980); Tennessee Rules of Evidence 401; *Austin v. City of Memphis*, 684 S.W.2d 624 (Tenn. Ct. App. 1984); *Inman v. Aluminum Co. of America*, 697 S.W.2d 350 (Tenn. Ct. App. 1985).

*Id.* at 442-43.

Considering the record in this case as a whole, we do not find that the trial court abused his discretion in his ruling concerning the proposed evidence. Moreover, a review of the record reveals that the trial court allowed the evidence into the record in connection with the allegation of material misrepresentation, and that Allstate's counsel cross-examined the plaintiff in some detail concerning the prior fire losses. It appears that all of the evidence concerning the prior fire losses was introduced, and, therefore, if there was any error in the trial court's initial ruling it was certainly harmless. This issue is without merit.

-6-

III. Did the Court err in bifurcating the trial of this matter?

Allstate filed a counterclaim against Calvin Johnson alleging that Calvin Johnson's action against Allstate is not in good faith and that pursuant to T.C.A. § 56-7-106 (1994) Allstate is entitled to damages not exceeding twenty-five percent of the amount of the loss claimed under the policy.

The trial court bifurcated the trial as to the original complaint and the counter-complaint. Allstate asserts that by doing so it was prevented from putting on evidence of its good faith in denying the claim. Allstate's offer of proof consisted primarily of additional proof concerning Calvin Johnson's prior fire losses and insurance claims, all of which he admitted during his cross examination.

In ***Ennix v. Clay***, 703 S.W.2d 137 (Tenn. 1986) this Court said:

> The decision whether or not to sever the issues for the jury must be left to the sound discretion of the trial judge, and the interests of justice will warrant a bifurcation of the issues in only the most exceptional cases and upon a strong showing of necessity. In making its decision the trial court should consider the possibility of juror confusion, the risk of prejudice to either party, and the needs of judicial efficiency. Above all, the issues at trial must not be bifurcated unless the issue to be tried is so distinct and separable from the others that a trial of it alone may be had without injustice.

703 S.W.2d at 139.

While we have some doubts that the trial court properly exercised its discretion in regard to bifurcation in this case, an examination of the proof allegedly kept from the jury indicates that if the trial court was in error in bifurcating the issues, the error was actually harmless error. Therefore, this issue is without merit.

IV. Was Allstate unduly prejudiced by the Court's procedural rulings
to the point of precluding it from receiving a fair trial?

Allstate asserts that the trial court made several erroneous procedural rulings which prohibited it from having a fair trial. First, Allstate claims that the trial court erred in allowing Carlene Y. Spear, a general session judge in Grundy County, to act as counsel on behalf of Steven Johnson. Allstate argues that Spears' position as an active member of the local judiciary unduly and unfairly prejudiced Allstate.

T.C.A. § 16-15-5002 (1994) provides:

> **16-15-5002. Time judge must devote to office - Practice of law or other employment.** -(a) All general sessions judges in Class 1, 2 or 3

counties shall devote full time to the duties of such office and shall be prohibited from the practice of law or any other employment which conflicts with the performance of their duties as judge.

(b) General Sessions judges in class 4 through class 8 counties shall be considered part-time judges and shall not be prohibited from the practice of law or other gainful employment while serving as judge except to the extent such practice or employment constitutes a conflict of interest.

Grundy county falls under section (b). Therefore, Spear is allowed to practice law unless a conflict of interest is present. Allstate has failed to show any conflict of interest caused by Spear's representation. Further, Allstate did not object to her representation at trial. Therefore, we find no reversible error.

Allstate asserts that the trial court's second procedural error was in allowing plaintiff's counsel and Steven's counsel to confer regarding their peremptory challenges. Allstate insists that this gave plaintiff an unfair advantage and violates T.C.A. § 22-3-105 (1994), which reads:

> **22-3-105. Peremptory challenges – Effect of consolidation of cases.**
> (a) Either party to a civil action may challenge four (4) jurors without assigning any cause. (b) In the event there is more than one (1) party plaintiff or more than one (1) party defendant in a civil action, four (4) additional challenges shall be allowed to such side or sides of the case; and the trial court shall in its discretion divide the aggregate number of challenges between the parties on the same side which shall not exceed eight (8) challenges to the side, regardless of the number of parties. Even when two (2) or more cases are consolidated for trial purposes, the total challenges shall be eight (8), as herein provided.

In *State v. Simon*, 635 S.W.2d 498 (Tenn. 1982), our Supreme Court considered the method for exercising peremptory challenges in a criminal case. The trial court prohibited conference among counsel when they sought to collaborate with each other in the exercise of peremptory challenges. The Supreme Court noted that the Tennessee Rules of Criminal Procedure do not prohibit such consultation and held that the preferable practice is to avoid duplication. *Id.* at 508.

We find nothing in the Tennessee Rules of Civil Procedure or Tennessee Code that prevents parties from collaborating in the exercise of peremptory challenges. The *Simon* court noted this fact and stated that the method of exercising peremptory challenges is left to the discretion of the trial court. *Id*. at 507. We find no error in allowing counsel to collaborate.

Allstate asserts that the third procedural error involves the court ruling regarding rebuttal witnesses. Tenn.R.Evid. 615, Exclusion of Witnesses, was invoked for the trial. At the conclusion of Allstate's proof, plaintiff's counsel announced that he intended to call Linda Johnson as a rebuttal

witness, and a discussion was had concerning the proper procedure for his preparing the witness for testimony. The record reveals the following colloquy between counsel and the court.

MS. COOPER: With all due respect to the Court, it's my understanding that anything that is testified to in this court cannot be relayed to an individual who's going to be called to testify.

MR. CLEMENTS: Well, I want to make sure. I'm not so worried about that. Obviously I cannot put a rebuttal witness on and – to me, it'd be malpractice if you don't tell them what you're going to ask them.

THE COURT: I don't think there's any problem your telling them, the witnesses, the questions you're going to ask.

MR. CLEMENTS: I want to tell the witness what I'm going to ask that witness.

THE COURT: Well, out of an abundance of caution, don't tell them what's been said in the courtroom, but certainly if you put a witness on you've not talked with, that's dangerous and you've got a right to ask him.

MR. CLEMENTS: And I'm going to tell him exactly the questions I'm going to ask him and what it relates to. I don't intend to relate that A, B, C said D, E, F, but I've got to give them some factual background, do you know so-and-so and so-and-so. I mean, otherwise they won't know what I'm talking about, but I'm not going to say that somebody testified to so-and-so that's a non-party.

I just want to make that clear, that I've got the right to do that. I don't think there's any question about it, but I do.

THE COURT: I don't see how you can call a rebuttal witness unless you do.

MS. COOPER: I agree, Your Honor.

THE COURT: I'm going to trust that I have – and it's been evidenced today – very good lawyers in this courtroom to deal with from all sides, and obviously I've known Mr. Clements for 25 years. I'm confident I've got ethical, competent attorneys, and I'm not going to try to give you any guidelines other than that. I think I can rely on your judgment

-9-

to stay within the rules, and I suspect you'll make every effort to clearly stay within the rules.

Allstate urges that the trial court did not comply with that part of Rule 615 which states: "The court shall order all persons not to disclose by any means to excluded witnesses any live trial testimony or exhibits created in the courtroom by a witness." We note that the trial court specifically stated, "Well, out of an abundance of caution don't tell them what's been said in the courtroom." We believe this statement by the trial court complies with the spirit of Rule 615. The court did not err in this regard.

> V. Did the Court err in not finding that Calvin Johnson failed to meet his burden of proving the fire loss to the vehicle was accidental, as required by the policy?

Allstate asserts in its fifth issue that the trial court erred in not requiring that plaintiff prove the fire loss was accidental. It is undisputed that the vehicle was insured by Allstate. However, Allstate asserts that the loss was not covered under the policy because the fire loss was not an "accidental" loss, as required by the policy. Allstate further asserts that plaintiff had the burden to prove the loss was accidental, that plaintiff failed to prove such, and that, therefore, the trial court erred in denying its motion for a directed verdict.

A claimant under an insurance policy must prove the existence and validity of the policy and the details of the claim. *First Am. Nat'l Bank v. Fidelity & Deposit Co.*, 5 F.3d 982, 984 (6th Cir, 1993). However, there is a presumption that the burning of property is the result of an accidental cause. *Ricketts v. State*, 241 S.W.2d 604 (Tenn. 1951). Further, plaintiff testified that he did not set the fire and that he did not know who did. A directed verdict is not appropriate when the accused testifies that he did not set fire to the property in question and that he has no idea who did. *Jones v. Tennessee Farmers Mut. Insur. Co.*, 896 S.W.2d 553 (Tenn. Ct. App. 1994). This is a question for the jury. *Id.* Further, Steven testified that he was driving the vehicle at the time it caught fire and that he did not know the cause of the fire. Mother also testified that she was following in her vehicle behind Son when vehicle caught fire and that she saw no signs of arson. We believe this testimony meets plaintiff's burden.

An insurer seeking to prove an arson defense has the burden of proving all of the requisite elements of the defense. *Alexander v. Tennessee Farmer's Mut. Inc. Co.*, 905 S.W.2d 177 (Tenn. Ct. App. 1995). An insurance company must show by a preponderance of the evidence (1) that the loss was due to a fire of incendiary origin, (2) that the insured had an opportunity to set the fire, and (3) that he had a motive to do so. *McReynolds v. Cherokee Insur. Co.*, 815 S.W. 2d 208, 211 (Tenn. Ct. App. 1991). All three elements must be established by the party attempting to prove arson. *Walters v. Tennessee Farmers Mutual Insur. Co.*, 873 S.W.2d 691, 694 (Tenn. Ct. App. 1993).

Allstate is apparently contending in this issue that the trial court erred in not granting it a directed verdict. We find no such error. "The constitutional right to a jury trial requires the submission of the case to the jury except where there is no doubt as to the conclusion to be drawn from

the whole evidence." ***Jones v. Tennessee Farmers Mut. Ins. Co.***, 896 S.W.2d 553, 555 (Tenn. Ct. App. 1994). Plaintiff's fifth issue is without merit.

>VI. Did the Court improperly instruct the jury on Allstate's burden of establishing the defense of misrepresentation of the loss, thereby committing reversible error?

In its sixth issue, Allstate asserts that the trial court improperly instructed the jury regarding Allstate's burden of establishing the defense of misrepresentation of the loss. Allstate requested a modification of the Tennessee Pattern Jury Instruction 13.24 on the defense of misrepresentation of the loss. Allstate requested that the instruction be modified to add that an insured may void the policy by swearing with disregard for truth, or swearing to the truth of facts which the insured does not know to be true.

The trial court denied Allstate's request and instructed the jury as follows:

>[B]efore you may find that the policy has been voided under the fraud or false swearing provision of the policy, you must find from a preponderance of the evidence that the plaintiff made misrepresentations as to material matters and that he did so willfully and with the intent to deceive the insurer. If you find that the plaintiff intentionally made false statements in its proof of loss as to the value or if you find that he intentionally made false statements to the insurer concerning the cause and the origin of the fire, the whole policy is voided and the plaintiff cannot recover.

The trial court's instruction is consistent with the law in Tennessee. In ***Boston Manuf. Insur. Co. v. Scales***, 101 Tenn. 629, 99 S.W. 742 (1899), the Tennessee Supreme Court distinguished between false statements made in the application for insurance from those made subsequent to the issuance of the policy. The court stated that material misrepresentations made in a proof of loss statement do not void an insurance policy, unless evidence establishes, on the plainest grounds, that the misrepresentations were willfully and knowingly made with the intent to deceive or defraud the insurer. 99 S.W. at 746; *see also **Nix v. Sentry Ins.***, 666 S.W.2d 462, 464 (Tenn. Ct. App. 1983). Therefore, we find this issue is without merit.

>VII. Did the Court err in making a number of invalid evidentiary rulings, prejudicing Allstate to the point of precluding a fair trial?

Allstate asserts that the trial court made erroneous evidentiary rulings which precluded it from receiving a fair trial. The trial court is afforded wide discretion in the admission or rejection of evidence, and the trial court's action will be reversed on appeal only when there is a showing of an abuse of discretion. ***Otis v. Cambridge Mut. Fire Ins. Co.***, 850 S.W.2d 439 (Tenn. 1992); ***Davis v. Hall***, 920 S.W.2d 213, 217 (Tenn. App. 1995).

Allstate also asserts that the trial court erroneously allowed as plaintiff's rebuttal proof the testimony of Glen Doyle Myers who was not previously identified on plaintiff's witness list. Plaintiff points out that the Tennessee twelfth judicial district, local rule 11.01, excludes rebuttal and

impeachment witnesses from the obligation to exchange witness lists prior to trial. Allstate asserts that local rule 11.01 contradicts Tenn. R. Civ. P. 26.02, which permits parties to discover the identity of all persons having relevant knowledge of any discoverable matter, including the facts relevant to any claim or defense involved in the litigation.

It is well settled that the trial courts of this state have the authority to make and implement reasonable local rules of practice and procedure in their respective courts, as long as these local rules do not conflict with a substantive rule of state law. *Richie v. Liberty Cash Grocers, Inc.* 63 Tenn. App. 311, 471 S.W.2d 559, 560 (Tenn. Ct. App.1971); *Brown v. Daly*, 884 S.W.2d 121, 123 (Tenn. Ct. App.1994); *Pettus v. Hurst*, 882 S.W.2d 783, 786 (Tenn. Ct. App.1993).

We can not find that local rule 11.01 contradicts Tenn. R. Civ. P. 26.02. Rule 11.02 deals with the exchange of witness lists prior to trial; it has nothing to do with the scope of pretrial discovery permitted by Tenn. R. Civ. 26. We have no record of what transpired when Allstate's counsel objected to Myers's testimony. In the absence of such a record, we cannot say that the trial court erred in allowing the testimony. We find this issue without merit.

Allstate also asserts that the trial court erred in allowing the introduction into evidence of a publication titled "Mitsubishi Eclipse, Plymouth Blazer, and Eagle Talon, 1990 to 1994, All Models" which Steven Johnson testified on rebuttal that he purchased from the Autozone in Manchester, Tennessee the night before his testimony. The page of the publication showing the location of the fuse box was allowed into evidence over the objection of Allstate. Allstate argues that the publication is hearsay and should have been excluded by the court. Rule 801, Tenn.R.Evid. states:

> **Rule 801. Definitions.** - The following definitions apply under this article:
> (a) Statement. - A "statement" is (1) an oral or written assertion or (2) nonverbal conduct of a person if it is intended by the person as an assertion.
>
> (b) Declarant. - A "declarant" is a person who makes a statement.
>
> (c) Hearsay. - "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

The publication is a written assertion offered to prove the location of the fuse box; thus, to prove the truth of the matter asserted. Therefore, unless within an exception of the hearsay rule, the publication should have been excluded, and we find no such exception. Plaintiff asserts that the trial court can take judicial notice of the publication, as provided for in Tenn.R.Evid. 201. We disagree with this assertion.

Although the trial court erred in admitting the publication, from our review of the entire record, it appears that the admission of this document is harmless error.

Allstate next asserts that the trial court erred in refusing to allow certain witness testimony. Allstate's brief states:

> The Court also failed to allow key defense witnesses to testify before the jury of twelve (12) regarding the reputation and character of Calvin Johnson and Steven Johnson. Further, the Court refused to allow the same defense witnesses to testify regarding the Johnson's history for arson in the community and general reputation and propensity for untruthfulness. Such inquiries were made via an offer of proof outside of the presence of the jury, and the jury was not permitted to weigh this compelling evidence in reaching their verdict.
>
> As a basis for admissibility of evidence as to the character, reputation, history of truthfulness in the community, and propensity for arson, Allstate would show this Honorable Court that this was a case involving allegations of insurance fraud. As such, a parties' credibility, propensity for truthfulness or lack thereof, moral turpitude, and reputation and history of similar acts is relevant pursuant to Tennessee Rule of Evidence 401. As was previously addressed, such information is also relevant pursuant to Rule 404(b) of the Tennessee Rules of Evidence. A party's character, propensity for truthfulness or untruthfulness, and reputation in the community can be proven and are also relevant pursuant to Rules 405 of the Tennessee Rules of Evidence, 608, and 803 (21).
>
> Rule 405 of the Tennessee Rules of Evidence permits introduction of evidence of character or a trait of character of a person, and states that "proof may be made by testimony as to reputation or by testimony in the form of an opinion." Tenn. R. Evid. 405.
>
> Further, Rule 608 of the Tennessee Rules of Evidence allows introduction of specific instances of conduct, such as prior criminal acts or arson acts, and such evidence is clearly probative of the truthfulness or untruthfulness of the parties in this litigation. Rule 608 states in fact that "[t]he credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation. . ." Tenn. R. Evid. 608. "The particular trait of truthfulness, however, is always an issue when a witness testifies." *State v. West*, 844 S.W.2d 144, 149 (Tenn. 1992).

It is difficult from the record to determine precisely the offer of proof made because, for the most part, the offer of proof was made in a summary fashion; more or less a colloquy between the court and Allstate's counsel. We quote from the record.

THE COURT: And all that testimony, I will allow to come in on the bad faith claim, if and when we get there.

MS. COOPER: In addition, Your Honor, for offers of proof purposes, I have subpoenaed a witness by the name of Jerry Prater, who is a volunteer fire department personnel member, who is aware of the Johnson fires history and Ms. Carolyn Baker. I misstated her name on the subpoena. Ms. Rollins is the individual that I asked for a sidebar on, and for the purposes of clarifying the record, Ms. Rollins is going to testify not only about the prior fires but about some of the credibility and impeachment components I wanted to use against the plaintiff.

There have been some allegations of threats and additional information I wanted to get out of her, but I was afraid to do so before the jury for the simple reason that those allegations overlap the fact that that fire was occurring.

THE COURT: It might be useful for me, and since the jury's gone, why don't you just put that witness on and give me the opportunity to hear that firsthand and then I can make a more sensible ruling?

MS. COOPER: Would Your Honor like to hear, in summary, Jerry Prater's testimony?

THE COURT: If you will, we might release him. Let's go to him and discuss that.

MS. COOPER: Mr. Prater was going to testify that he actually responded to four of the other Calvin Johnson fires, one that occurred 15 to 20 years ago, a house trailer fire in October of 1992, a frame house fire, and that he is aware due to the fact that he is a volunteer fireman of reputation of multiple additional fires in the Grundy County area. He actually responded to and is aware of this car fire. His colleagues, more or less from various rural fire departments, and he have discussed the Calvin Johnson reputation in the community, which I do believe is at issue in this trial, and they have quite a reputation for multiple, numerous fires and have actually been referred to among local fire departments as arson bugs, Your Honor.

THE COURT: I don't know that I'm going to let you put the reputation of "arson bugs" in on the bad faith claim, but I'm going to rule that that witness would come in, if at all, on the bad faith portion bifurcated.

MS. COOPER: What about the young lady?

MR. CLEMENTS: Cottrell.

THE COURT: I cut you off on the question you asked. You said you wanted to make a –

MS. COOPER: Please, Your Honor. Thank you for reminding me about one.

The same thing actually. No, I take that back. It was Ms. Cottrell.

For purposes of offer of proof, it's Defendant's position that once Ms. Cottrell had exclaimed Tom Steel was extremely upset after discussing the situation with Steven and Calvin Johnson, that Tom Steel relayed the fact that the Johnsons were asking him to lie for him. Again, he told them he wasn't going to do it. The quote is, "I won't lie for that dumb son of a bitch." It is my opinion that the response to the objection that was going to be stated on the record, that was an exception of the hearsay rule of Tom Steel due to his then existing emotional state, of the 803-3 under the Tennessee Rules of Evidence, Excited Utterance, 803-3. It's a statement of rule of interest under 840-3 because were he to acquiesce, he'd be submitting himself to perjurous testimony, and then subsequent to that conversation, that response, Tom Steel drove Shannon Cottrell and Shane Tate by Steven Johnson's trailer, pointed out the remains of the burned car, and said, quote, "That's the damn car they wanted me to lie about, I'm not going to do it."

THE COURT: And I'm sustaining the objection. All Right.

An offer of proof was made of the testimony of Carolyn Baker Rollins. She testified that she lived at 441 Hickerson Road, Manchester, Tennessee, and that her property is located near the property owned by Calvin Johnson. Her parents own the home across the road from the Johnson property on Hickerson Road. Both the Johnsons and her parents lived at the same location about fifteen years ago. She was questioned concerning an incident that occurred about that time when the Johnsons had a home that burned down. She testified that she was living with her parents at the time, and it was getting late and she saw a lamp on in the window of the Johnson home. She said that later she smelled something burning and remarked to her father that something was burning. She then noticed that the Johnson house was on fire, so she called 911. She stated that she had seen the Johnsons leave earlier that afternoon and that they were not home at the time. She testified that she spoke to Linda Johnson some time after that, and she could not recall anything because it was such a long time ago. She remembers something about who called the fire department, and she told Linda Johnson that she called

-15-

the fire department. She testified that her feeling was that it was not appreciated that she called the fire department. She further testified that she had heard about some other fires on the Johnson property, such as a trailer burning after the house was burned. She testified that she had just heard that and knows about it because she lived in Murfreesboro at the time. The court questioned her concerning the conversation she had with Linda Johnson. She responded to the court that she didn't have any idea about what was said, that it was fifteen or sixteen years ago, and she just did not remember.

The offers of proof fall short of attacking the reputation of the plaintiff for truth and veracity. The verbatim testimony of Ms. Rollins concerning an episode of 15 or 16 years before the trial aptly demonstrates the quirks of memory. From our review of the record as a whole, we cannot say that the trial court abused its discretion in excluding the proffered evidence.

Allstate also asserts that the trial court erred in not allowing Allstate to put on witnesses to testify as to the integrity and character of its witness, Tom Steel. Allstate contends that because Calvin and Steven Johnson contradicted Steele's testimony, it was an attack on his character. In Neil P. Cohen, Tennessee Law of Evidence § 608.11 (3d ed. 1995), it is stated:

> *Attack on character* - A witness can be rehabilitated only after the witness's character for truthfulness has been attacked. Rule 608 does not indicate what constitutes an attack on credibility. Obviously an attack on character occurs if an opinion or reputation witness testifies that the witness has a character for untruthfulness. Other methods of attack, triggering the right to rehabilitate the witness, include introduction of a prior criminal conviction, Rule 609, prior specific acts, Rule 608(b), and proof that the witness has been corrupted. Conversely, it is widely held that a witness's character is not attacked simply by proving that the witness is biased. However, if the ground of bias is a form of corruption, such as taking a bribe, rehabilitative character evidence may be admissible.
>
> Several methods of impeachment may or may not constitute an attack on a witness's character for truthfulness, depending on the circumstances. The critical question is whether the proof is suggesting that the witness has an untruthful character. ***Contradiction was cited by the Advisory Committee to the Federal Rules of Evidence as an impeachment mode that does not necessarily engender an attack on truthful character.*** Contradiction proof can simply be used to establish that the witness, though a truthful person, is forgetful. Similarly, a prior inconsistent statement or a vigorous cross-examination does not always suggest the witness has an untruthful character, but the facts of each case mus t be examined carefully. (Emphasis added).

*          *          *

From our review of the record, we do not find that the trial court abused its discretion in not allowing the proffered testimony.

VIII.  Did the Court err in proffering an incorrect jury verdict form, thereby confusing the jury and committing prejudicial, reversible error?

Allstate asserts that the trial court erred in giving an incorrect instruction to the jury on the jury verdict form itself.  The instruction erroneously stated that if the jury answered Question No. 2 "no," then they should go directly to Question No. 4.  The court noticed this error after the jury came back leaving Question No. 3 unanswered.  When the court noticed the error, he reinstructed the jury that they needed to respond to Question No. 3 regardless of what answer they had given to Question No. 2.  The jury left and after further deliberation answered Question No. 3.

The trial court properly instructed the jury and sent the jury back to complete the jury verdict form.  We find no prejudice to Allstate in this inadvertent error which was promptly corrected by the court upon discovery.  This issue is without merit.

The judgment of the trial court on the jury verdict is affirmed, and the case is remanded to the trial court for such further proceedings as may be necessary.  Costs of the appeal are assessed against the appellant, Allstate Insurance Company.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.